### GRIFFIN v. UNITED STATES.
#### No. 1007.

United States District Court,
W. D. Arkansas, Fort Smith Division.
Oct. 15, 1953.

G. Byron Dobbs, Fort Smith, Ark., Wiley W. Bean, Clarksville, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

On March 28, 1952, George Griffin, Sr., filed his complaint against the defendant and alleged that he was principal beneficiary of National Service Life Insurance Certificate Number V–1521–14–49, in the amount of $10,000, issued upon the life of his son, George Griffin, Jr.; that, while George Griffin, Jr., was in the military service, and while said insurance was in full force and effect, the said George Griffin, Jr., died on March 24, 1951; that he, George Griffin, Sr., applied to the Veterans' Administration of the United States of America for payment under the policy, but that his claim was finally and definitely denied on January 23, 1952, by R. J. Hinton, Director of Claims; and that as principal beneficiary he was entitled to recover judgment against the defendant for the principal sum of $10,000, interest, costs and attorneys' fee.

The defendant on May 21, 1952, filed its answer in which it admitted issuance of the policy and the death of the insured, George Griffin, Jr., but alleged that the said insurance had lapsed for non-payment of premiums, and further that the insured had forfeited all rights under the National Service Life Insurance Act because he had committed the offense of desertion.

On June 27, 1952, George Griffin, Sr., died, and upon motion of Rosa Griffin, administratrix of the estate of George Griffin, Sr., the Court entered an order on April 10, 1953, substituting the said Rosa Griffin, as administratrix of the estate of George Griffin, Sr., deceased, as party plaintiff and reviving the case in her name as such Administratrix.

The case was tried to the Court, without a jury, on August 26, 1953, and at the conclusion of the testimony the case was taken under advisement by the Court, subject to the filing of briefs by the respective parties. The briefs have now been received, and the Court, having considered the pleadings, ore tenus testimony of the witnesses, depositions, exhibits, briefs, and stipulations of fact filed by the parties, now makes and files herein its findings of fact and conclusions of law, separately stated.

Findings of Fact

No. 1. The original plaintiff, George Griffin, Sr., was, at the time of the filing of this suit, a citizen and resident of Johnson County, Arkansas. A disagreement had arisen between the plaintiff and the defendant as to plaintiff's claim for $10,000 as beneficiary of National Service Life Insurance Certificate Number V–1521–14–49 issued upon the life of George Griffin, Jr., son of the said George Griffin, Sr.

No. 2. On June 27, 1952, subsequent to the filing of this suit, the original plaintiff, George Griffin, Sr., died, and the present plaintiff, Rosa Griffin, is administratrix of the estate of George Griffin, Sr. The said Rosa Griffin was

the wife of George Griffin, Sr., and the mother of George Griffin, Jr.

No. 3. "George Griffin, Jr., was inducted into and entered active duty in the Army of the United States on April 20, 1945, and was honorably discharged on January 23, 1946. That on January 24, 1946, the said George Griffin, Jr., re-enlisted in the Army of the United States and continued in service until the 5th day of May, 1949, when he was discharged 'under honorable conditions', having served two years, eleven months and eight days overseas." (Stipulation of fact No. 4.)

On May 6, 1949, the insured, George Griffin, Jr., enlisted in the Enlisted Reserve Corps, and on October 11, 1950, was called into extended active duty. On October 13, 1950, he applied for and was granted National Service Life Insurance in the amount of $10,000, and Policy No. VI521–14–49 was issued to him. Principal beneficiary of the policy was George Griffin, Sr., and contingent beneficiary was Rosa Griffin. In the application the insured selected, as method of payment of premiums, an allotment to be taken from his active service pay. (Class N allotment.)

On November 28, 1950, the insured left Camp Stoneman, California, and was absent without leave from that time until his death on March 24, 1951. The insured died at the home of his mother and father, Mr. and Mrs. George Griffin, Sr., at Clarksville, Arkansas. The attending physician, Dr. R. E. King, certified that the insured's death was caused by a cerebral hemorrhage and bronchial pneumonia.

The military authorities at Camp Chaffee, Arkansas, took control and possession of the body of the insured and caused an autopsy to be performed, which autopsy disclosed findings of: Aneurysm, circle of Willis with perforation, hemorrhage into subarachnoid space, and broncho pneumonia.

Thereafter, a military funeral was conducted by the Army and the flag was presented to his mother, Rosa Griffin. Later, the statutory gratuity was paid to the insured's parents by the United States.

On May 2, 1951, George Griffin, Sr., executed his claim as beneficiary of the insured's policy, and on January 23, 1952, R. J. Hinton, Director, Dependents & Beneficiaries Claims Service, Veterans Administration, wrote to George Griffin, Sr., stating, inter alia, "However, due to the serviceman's status at the time of his death, the serviceman's National Service Life Insurance has been cancelled, effective as of November 28, 1950. Therefore, no insurance benefits are payable and your claim has been disallowed."

No. 4. Major Walter C. Hudson investigated the death of the insured and submitted a complete report of his findings, conclusions and opinions. This report was submitted April 10, 1951, and approved by the Adjutant General April 24, 1951, and sent to Secretary of the Army. On June 4, 1951, the Secretary of the Army, Frank Pace, Jr., after having an opportunity to read and consider this report, as well as the insured's military records and any other pertinent information, executed and caused to be delivered to George Griffin, Sr., the following Certificate of Honorable Service:

"Honorable Service
(The Great Seal
of the
United States.)
In the Armed Forces of the
United States of America
This Is To Certify That
Private George Griffin, Jr.
Died While in the Service of
Our Country
As a Member of the
Army of the United States
On the 24th Day of March 1951. This
Certificate is
Awarded as a Testimonial of
Honest and Faithful Service
/s/ Frank Pace Jr
_____
Secretary of the Army"

This certificate was issued under the provisions of Department of the Army Spe-

cial Regulation 600–45–3, 17 May 1949, which provides, in part:

"12. Certificate of Honorable Service and Record of Service (deceased military personnel) a. A Certificate of Honorable Service (AGO Form 01219) is issued to the closest next of kin of record in recognition of services rendered by those who die in line of duty while in the active military service * * *

"(2) Certificates of Honorable Service will be issued by The Adjutant General upon receipt of reports of death."

No. 5. At the time the insured left Camp Stoneman, California, the United States was indebted to him in the sum of $64.31 as his regular service pay for the period from November 1 to November 28. This sum of money remained to insured's credit on the payroll until after his death. Nevertheless, Captain William L. Otis, purporting to act under the authority of Department of the Army Special Regulation No. 35–1900–5, 10 October 50, on February 28, 1951, executed form DD 234 and on March 6, 1951, Lt. Col. F. S. Stratton, disbursing officer, discontinued the insured's allotment as of November, 1950, but no disposition of the service pay was made.

Regulation 35–1900–5, supra, provides:

"Sec. 1(6). When a person is in a continuous non-pay status for 10 days or more, e. g., AWOL, the personnel officer will prepare separate Form 234 for each class of allotment (E, D and N) and forward such forms promptly to the disbursing officer having custody of the person's military pay record * * *. Upon receipt of Forms 234, the disbursing officer will discontinue deductions of such allotments by closing out the entry on the Military Pay Record (NME Form 113) of the individual concerned."

"Sec. 3b(1) (b). Class D and N allotments will be discontinued as of the last day of the most recent month during which sufficient pay accrues to the alloter from which deduction may be made."

"Sec. 3b(2). Involuntary discontinuance of class D and N allotments * * * should be approached with care as the allotter's insurance status is involved. Proper attention to the effective date of discontinuance will prevent many policies from lapsing unnecessarily."

The monthly premium was $7.20 and the $64.31 held by the Army was more than sufficient to pay all premiums that accrued from the date of the policy to the date of the death of insured.

No. 6. None of the Army records of the insured indicate that he was ever considered or found by the Army to have been guilty of desertion. Nevertheless, on October 11, 1951, L. P. Payne, acting for C. A. Zoller, Jr., Director of Underwriting Service, executed a paper styled "Decision of Forfeiture" which purports to forfeit insured's policy as of November 28, 1950, on the ground that the insured was guilty of desertion. This instrument was never transmitted to George Griffin, Sr., or to Rosa Griffin.

No. 7. From the time insured left Camp Stoneman on November 28, 1950, until his death on March 24, 1951, his mental and physical condition was such as to cause him a great deal of difficulty. He was frequently bothered with severe headaches, would often have mental lapses and be unable to answer questions, and displayed violent fits of temper at times. During the period preceding his death, he attempted to work in the timber business with his brother, John Griffin. Some days he was able to work satisfactorily but other days he would be forced to quit because of his severe headaches. During this time he stated to several people that he intended to go back to camp as soon as he was able. On one particular occasion his brother, John Griffin, gave him $50 with which to return, and the insured left his mother's home stating that he was going back to camp. However, he returned in

about a week to his mother's home. Thereafter, he worked several days with his brother, John Griffin, until he became seriously ill, and, as heretofore stated, he died on March 24, 1951, at his mother's home.

Throughout the time the insured was absent without leave, he actually intended to return to camp and would have done so had it not been for physical and mental difficulty he was experiencing.

No. 8. A reasonable attorneys' fee to be allowed plaintiff's attorneys is ten per cent of the amount of the judgment.

### Discussion

Two questions are presented to the Court for determination: (1) Was the insured, George Griffin, Jr., guilty of desertion, thereby forfeiting his rights under the National Service Life Insurance Act? (2) Did the insured's policy lapse for non-payment of premiums?

In reference to the first question, 38 U.S.C.A. § 812 provides:

"Any person guilty of mutiny, treason, spying, or desertion, or who, because of conscientious objections, refuses to perform service in the land or naval forces of the United States or refuses to wear the uniform of such force, shall forfeit all rights to insurance under this chapter. * * * "

The defendant contends that the insured was guilty of desertion, that the Director of Underwriting Service has so found, and that therefore he forfeited his rights under the Act. On the other hand, the plaintiff contends that the Certificate of Honorable Service conclusively establishes that the insured was not guilty of desertion, and, in any event, that he was not in fact guilty of desertion because he did not intend to remain away permanently.

■ As to the effect of the Certificate of Honorable Service, the Court feels that the same rules of law apply to said certificate as apply to an honorable discharge. An honorable discharge cannot be issued to a person after he is dead, and in lieu thereof a Certificate of Honorable Service, which is the equivalent thereto, is issued.

■ Under the law, an honorable discharge of a soldier at the end of his service is a formal final judgment passed by the government upon the entire military record of the soldier, and it is an authoritative declaration that he has left the service in a status of honor. United States v. Kelly, 15 Wall. 34, 82 U.S. 34, 21 L.Ed. 106; In re Fong Chew Chung, 9 Cir., 149 F.2d 904; Ex parte Drainer, D.C.Cal., 65 F.Supp. 410, affirmed in 158 F.2d 981; 6 C.J.S., Army and Navy, § 32, page 415; 36 Am.Jur., page 208. See also, United States ex rel. Hirshberg v. Cooke, Commanding Officer, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621.

In Ex parte Drainer, supra, Drainer had enlisted in the Marines and deserted after a month. He later was convicted of breaking and entering and served two years in a reformatory in Iowa. Thereafter he voluntarily enlisted in the Navy and after a year and a half of honorable service received an honorable medical discharge from the United States Naval Service. Subsequently he was arrested, tried and found guilty of desertion from the United States Naval Service (Marines). He applied for writ of habeas corpus and the Court granted the petition, holding that the Marine Corps was a part of the Navy and that his honorable discharge from the United States Naval Service was a "formal final judgment upon the entire military record" of Drainer, thus foreclosing the attempted prosecution of Drainer for desertion.

■ Likewise, in the instant case the Court is of the opinion that the Certificate of Honorable Service conclusively establishes the fact that George Griffin, Jr., was not guilty of desertion. This is especially true in view of the fact that the Secretary of the Army, at the time he executed the Certificate, had previously received a complete report of the death of the insured and had before him all the pertinent facts and circumstances surrounding the death.

And, even if the Certificate is not conclusive, the Court is of the opinion that the insured was not guilty of desertion. The crime of desertion requires two elements: (1) absence without authority, and (2) intent to remain away permanently. In the instant case the insured was absent without authority, but the Court is convinced that he at no time intended to remain away permanently. In reaching this conclusion the Court has considered the following facts: The insured, after he left the Camp, returned to his home, and if he had intended to remain away from the Camp permanently it seems reasonable to assume that he would not have gone to the very place where the military authorities would search for him. The evidence as a whole indicates that he intended to return but kept postponing the matter hoping that his physical condition, particularly his severe headaches, would improve. (The cause of his death is indicative of the fact that he actually suffered a great deal from these headaches.) Also, in determining his intention the Court has considered, over the objection of the defendant, statements made by the insured of his intention to return. It is true that these statements were hearsay, but the Court feels that under the circumstances in this case the said statements are admissible in evidence and should be considered. This Court has previously considered the question of the admissibility of such statements in evidence, and, because of the particular applicability of the statements of law therein to the facts in this case, the Court believes an extensive quotation from the opinion in the case of Fomby v. World Insurance Co. of Omaha, Nebraska, D.C., 115 F.Supp. 913, is warranted. Beginning at page 923 in that case it is said:

"It is pointed out by Dean Robert A. Leflar in his article, Theory of Evidential Admissibility—Statements Made out of Court, Vol. 2, Arkansas Law Review, page 26, at page 37, that:

"'Most of the learning concerning the Hearsay Rule in the law-books today relates to the exceptions to the Rule rather than to the rule itself, and it is probable that with the constantly expanding list of exceptions there is more hearsay evidence today that is admissible under the exceptions than is subject to exclusion under the Rule.

"'All writers on Evidence have discovered two common features of all Hearsay Rule exceptions. One of these is that there is some special greater-than-average necessity for admitting the particular type of hearsay evidence, it being particularly important that it be admitted because other equivalent evidence is normally unavailable and the person making the extrajudicial statement cannot be produced in court because he is dead or otherwise unavailable. The other common feature of the exceptions is some special greater-than-average reliability in the evidence covered by the exception, such as that the extrajudicial statement had been made under oath or other circumstances of particular solemnity, or at a time and in a situation when the maker thereof, or declarant, had no motive for falsification but rather had unusual reasons for telling the truth.'

"This testimony meets both standards, since there is no other equivalent evidence available; at the time the statements were made the deceased certainly had no reason to anticipate his death and, therefore, the value of the statements in connection therewith; had no reason to falsify; and all of the facts and circumstances are entirely consistent with the declared intention.

"The general rule appears to be that statements of a person since deceased with reference to the purpose of destination of a trip or journey that he was about to make are admissible. There are various

theories of admissibility, among which are (1) Res gestae, (2) Verbal acts, and (3) Exception to the Hearsay Rule allowing proof of intention. Annotation, 113 A.L.R. page 268.

"Support is found in the Arkansas cases for the admissibility of such statements under the 'res gestae' theory. In Sullivan v. State, 171 Ark. 768, 775, 286 S.W. 939, 942, the court said:

" 'In the above case [Spivey and Lynch v. State, 114 Ark. 267, at pages 275, 276, 169 S.W. 949, at pages 951, 952] we cited cases holding "that statements of one starting on a journey as to where he came from and where he was going, are ordinarily admissible in evidence as a part of the res gestae," and we said, * * *, under the cases relied upon by the Attorney General: "It was permissible to prove the declarations of the deceased to the effect that he was going to the home of the defendant Lillie D. Lynch, to visit her." '

"For a case from the United States Supreme Court holding such statements admissible see Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. For cases from various jurisdictions see the annotation in 113 A.L.R. page 268, supra.

"Without further discussion, suffice it to say that there is ample authority for the reception of this testimony. As to the authorities cited by the defendant, the court feels, without discussing the decisions in detail, that they are not controlling. These statements and the circumstances surrounding them adequately demonstrate that they were not made in bad faith and are not self-serving in the sense that self-serving statements are rejected. And, whether all of the requirements of res gestae are rigidly adhered to when such statements as in the pres-

ent case are admitted under that theory is, in the opinion of the court, immaterial, for that doctrine is in reality simply used as a matter of convenience to receive evidence that is relevant and material and which should be received but otherwise might be rejected as being hearsay. Perhaps the better reasoning calls for its reception under the intention exception, but again, this is unimportant other than from an academic point of view, because, as pointed out above, there is sufficient authority for receiving and considering the evidence, and the court so rules."

The defendant argues that the Veterans Administration has the authority to determine whether the insured was a deserter and that no conviction of the crime of desertion is necessary. Of course no conviction of the crime of desertion is necessary, because a dead person could not be tried and convicted, but it is extremely doubtful whether the Veterans Administration has the authority to make this determination. The defendant relies upon the case of Smith v. United States, D.C.Mont., 32 F.Supp. 657, as authority for such a determination by the Veterans Administration. However, in that case the insured had been carried on the rolls as a deserter, and the Court merely held that the notation of the act of desertion on the record is prima facie evidence of the desertion and is the equivalent of a discharge or dismissal on the ground of desertion. Thus, the Army, and not the Veterans Administration, had determined that the insured in that case was a deserter. In the instant case all of the Army records refer to the insured as being merely absent without leave, and said records make no intimation that the Army ever considered or determined the insured to be a deserter.

Since a determination of the status of desertion seems to be peculiarly within the province of the military authorities, it seems doubtful that the Veterans Administration has the authority to determine such a status for insurance pur-

poses. But, even assuming that the Veterans Administration does have such authority, its determination, while highly persuasive, is not binding upon this Court, and the Court is convinced that the insured, George Griffin, Jr., was not guilty of desertion.

This leaves for disposition the question of whether the policy lapsed for non-payment of premiums. A determination of this question depends upon whether the defendant, while having in its possession accrued active service pay, may nevertheless discontinue a soldier's insurance allotment merely because he is absent without leave.

The regulation under which the Army officers purported to act in discontinuing the insured's allotment has been set out hereinbefore. Said regulation provides that class N allotments, such as the one in this case, "will be discontinued as of the last day of the most recent month during which sufficient pay accrues to the alloter from which deduction may be made." The regulation further provides that involuntary discontinuance of class N allotments "should be approached with care as the alloter's insurance status is involved. Proper attention to the effective date of discontinuance will prevent many policies from lapsing unnecessarily." The Court feels that a proper construction of this regulation is that such allotments are to be discontinued only when there is no accrued active service pay from which to deduct the amount of said allotment. In the instant case there was accrued active service pay in the amount of $64.31, and this money should have been used to pay the insured's insurance allotment. To construe the regulation otherwise, in the opinion of the Court, would render it invalid. Certainly the offense of being absent without leave cannot be made, by regulation, a ground for forfeiture of National Service Life Insurance. Title 38 U.S.C.A. § 812 names the only acts which will forfeit such insurance, and new grounds for forfeiture cannot be added by regulation. Furthermore, Title 38 U.S.C.A. §

802(m) (1) provides that premiums, at the election of the insured, may be deducted from the insured's active service pay. In the instant case the insured in his application selected that method of payment. The Court is of the opinion that this selection is a part of the insurance contract and that the defendant, as long as there was accrued active service pay owing to the insured, was required to pay the insurance premiums; if the regulation were construed to permit the defendant to hold in its possession accrued active service pay and refuse to pay the premiums as specified in the application for insurance and authorized by 38 U.S.C.A. § 802(m)(1), supra, it would be invalid.

In United States v. Morrell, 4 Cir., 204 F.2d 490, the Court held that where the insured paid premiums on his National Service Life Insurance Policy while totally disabled and a refund was never made or requested, and insured subsequently returned to active duty and served until his death, during which time he paid no premiums, the plaintiff as principal beneficiary had the right to require that the refundable premiums be set off against premiums unpaid and thereby prevent a lapse or forfeiture of the policy. The Court, beginning at the bottom of page 492, said, inter alia:

"We see no reason why protection should not also be given to a policy holder who pays premiums during disability which are not due, but neglects to pay premiums which become due after his recovery. It then becomes the duty of the insurer under the general rule of insurance law to devote the funds of the policy holder to the payment of his debt, if they are sufficient for the purpose, and thus avoid a forfeiture. * * *

"It is a general rule of the law of insurance that an insurer is not justified in declaring a forfeiture of an insurance policy for the nonpayment of premiums when at the time the premiums accrue, the insurer is indebted to the insured,

either for dividends declared or other funds belonging to the insured which it may have in its hands. * * * The rule is subject to the limitation that if the policy expressly provides for the disposition of a credit in a particular manner, the insurer is under no obligation, unless the policy holder so directs, to apply the credit in some other way, even though it would be more advantageous for the insured or the beneficiary. * * * This limitation merely gives effect to the rule that the intent of the parties governs in the performance of a contract; and it has been so applied in the disposition of dividends payable under National Service Life Insurance policies where the terms of the statute and regulations expressly provided that dividends should be paid in cash only and should not be available to pay premiums. Parker v. Veterans Administration of the U. S., 5 Cir., 193 F.2d 149. These decisions are not controlling here for as we have seen, the words of the statute are not inconsistent with the use of the premium credit to defray the policy holder's debt, and there is no room for the contention that the consent of the policy holder is lacking since the beneficiary here stands in his place under the statute as the moving party in this case.

"We do not think that the broad contention, that the general rules of law of insurance have no application to the liability of the government under its National Service Life Insurance policies, can be sustained. In the application of these rules the broad sweep of government activities and the relationship between the government and its countless employees are of course taken into account * * *. But it cannot be said that when the government enters the insurance business it is free because of its sovereign character from all restraint, and that no heed need be given to the principles of law that have been worked out by the courts in the field of insurance law. * * *

"It does not appear that the interests of the government would be jeopardized in a case of this kind by the application of the wholesome rule against the enforcement of unnecessary forfeitures of contracts of insurance. To the disfavor in which forfeitures are generally held there is added in the case of the government the benevolent purpose of the National Service Life Insurance system to furnish to service men at low cost insurance otherwise unobtainable; and it cannot be supposed that it was the intent of Congress that the system should be technically administered. * * *"

In the instant case, since the defendant had in its possession accrued active service pay owing to the insured, it had the duty to use this money to pay the premiums on his policy, and the fact that the premiums were not paid through error on the part of the Army officers does not defeat the right of the plaintiff herein to recover under the policy. See, Patterson v. United States, D. C.Tenn., 85 F.Supp. 541.

The defendant cites several cases, asserting that they are authority for the proposition that the defendant was under no duty to use the accrued active service pay to pay the premiums. However, the cases cited by defendant are all cases in which the plaintiffs sought to have some unrelated fund, such as dividends, Jones v. United States, 8 Cir., 189 F.2d 601; Parker v. Veterans Administration, 5 Cir., 193 F.2d 149; or a difference in pay because of promotion, Mikell v. United States, 4 Cir., 64 F.2d 301, used for the payment of premiums. But, in the instant case, plaintiff is only seeking to have the accrued active service pay, which is the fund specified by statute and by the insured's application

for insurance, used for the payment of premiums, and the Court has concluded that the plaintiff has the right to have said fund so applied.

Therefore, the policy was in full force and effect at the time of the death of George Griffin, Jr., and plaintiff is entitled to recover the proceeds of said policy under the provisions of 38 U.S. C.A. § 802(t).

Plaintiff has prayed judgment for interest and costs, but these items are not recoverable against the United States in this action. See, Taylor v. United States, D.C.Ark., 113 F.Supp. 143; United States v. Citizens Loan & Trust Co., Administrator, 316 U.S. 209, 62 S.Ct. 1026, 86 L.Ed. 1387; United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887; Byrd v. United States, D.C.Ohio, 103 F.Supp. 128; United States v. Cathcard, D.C.Neb., 70 F.Supp. 653.

### Conclusions of Law

No. 1. The Court has jurisdiction of the subject matter of and the parties to this cause of action.

No. 2. The insured, George Griffin, Jr., was not guilty of desertion.

No. 3. National Service Life Insurance Policy No. V–1521–14–49 was in full force and effect at the time of the death of George Griffin, Jr., and the plaintiff, as administratrix of the estate of George Griffin, Sr., is entitled to recover of and from the defendant the proceeds of said policy in accordance with the provisions of 38 U.S.C.A. § 802(t).

No. 4. The plaintiff is not entitled to recover interest and costs of and from the defendant.

No. 5. A reasonable attorneys' fee for plaintiff's attorneys is 10 per centum of the amount recovered and to be paid by the Veterans' Administration out of the payments to be made under this judgment at a rate not exceeding one-tenth of each of such payments until paid.

A judgment in accordance with the above should be entered.