UNITED STATES of America,
Appellant,

v.

Rosa GRIFFIN, Administratrix of the Estate of George Griffin, Sr., Deceased,
Appellee.

No. 15032.

United States Court of Appeals
Eighth Circuit.

Oct. 29, 1954.

Writ of Certiorari Denied
Jan. 31, 1955.

See 75 S.Ct. 339.

Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., and Melvin Richter, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

G. Byron Dobbs, Fort Smith, Ark. (Wiley W. Bean, Clarksville, Ark., was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

George Griffin, Sr., the principal beneficiary under a policy of National Service Life Insurance issued to his son George Griffin, Jr., while on active duty in the Army, brought this action on March 28, 1952, against the United States upon the claim (previously disallowed by the Veterans Administration) that the policy was in force at the time the insured died on March 24, 1951, while absent without leave from his assigned station. During the pendency of the action, George Griffin, Sr., died and Rosa Griffin, administratrix of his estate, was substituted as plaintiff.

Two issues were presented by the pleadings and tried to the court: (1) whether the insured was guilty of desertion and had thereby forfeited his rights under the policy, and (2) whether the policy had lapsed for nonpayment of premiums. The court found in favor of the plaintiff on both issues and entered judgment against the United States for the proceeds of the policy, 115 F.Supp. 509. The Government has appealed, but challenges only the court's ruling that the policy had not lapsed for nonpayment of premiums at the time the insured died.

The question presented for decision is whether, in view of the insured's allotment for payment of premiums, uncollected active-service pay earned by him prior to the time he absented himself without leave from his assigned military station was to be applied to continue his National Service Life Insurance in force during the period of such absence without leave.

The facts with respect to that question are stipulated, and, so far as essential, may be summarized as follows:

On October 11, 1950, George Griffin, Jr., a member of the Army Enlisted Reserve Corps, entered upon extended active duty. On October 13, 1950, he made an application for level-premium five-year term National Service Life Insurance in the amount of $10,000, naming his father, George Griffin, Sr., as principal beneficiary, and his mother, Rosa Griffin, as contingent beneficiary. Under the heading in his application form, "Method of Payment of First Premium (Check one)," he checked: "Allotment from Advanced Active Service Pay, under the Provisions of Public Law 451, 77th Congress. Month Allotment Effective: Nov. 50 (2 ded.) [two deductions]." There was also a check mark before "Allotment from Active Service Pay. Month Allotment Effective: Nov. 50 (2 ded.)" On the day he made his application, the insured executed Standard Form DD 234 authorizing an allotment from his pay to cover a premium of $7.20 a month, referring specifically to the premiums for November and December, 1950. The insured's application was approved, effective November 1, 1950, and an allotment was made from the insured's service pay for the November and December premiums. This was a so-called Class "N" allotment.

On November 28, 1950, the insured absented himself without leave from his assigned station, Camp Stoneman, California, and did not return to military duty at any time prior to his death on March 24, 1951, which occurred at the home of his parents in Clarksville, Arkansas. At the time he went AWOL he was placed in a nonpay status, but was credited with $64.31 in accrued service pay for the period November 1, 1950, to November 28, 1950. For obvious reasons, the insured did not apply for or collect this pay. On February 28, 1951, Capt. William L. Otis, at Camp Stoneman, pursuant to Army Special Regulation 35–1900–5, October 10, 1950, executed Form DD 234 for the purpose of terminating the insured's allotment as of November, 1950. This form recited that the "Final Deduction to be Made" was "Dec. 1950," and the "Reason" "AWOL fr. 28 Nov. 1950." On March 6, 1951, the allotment was discontinued as of the end of November, 1950.

Special Army Regulation 35–1900–5, relative to discontinuing allotments, contains the following pertinent provisions:

"1. *Action upon discontinuance.*

"a. \* \* \*

\* \* \* \* \* \*

"(6) When a person is in a continuous nonpay status for 10 days or more, e. g., AWOL, the personnel officer will prepare separate Forms 234 for each class of allotments (E, D and N) and forward such forms promptly to the disbursing officer having custody of the person's military pay record. \* \* \* Upon receipt of Forms 234, the disbursing officer will discontinue deductions of such allotments by closing out the entry on the Military Pay Record (NME Form 113) of the individual concerned. \* \* \* The notation 'AWOL' on Form 234, without the signature of the allotter, is sufficient authority for discontinuance of any allotment in effect.

\* \* \* \* \* \*

"3. *Effective date of discontinuances.*

\* \* \* \* \* \*

"b. Involuntary discontinuances.

"(1) Whenever, because of reduction in grade, stoppage of pay, absence without leave, or for any other reason, a class E, D, or N allotment is discontinued involuntarily, the effective date of discontinuance \* \* \* will be as follows:

\* \* \* \* \* \*

"(b) Class D and N allotments will be discontinued as of the last day of the most recent month during which sufficient pay accrues to the allotter from which the deduction may be made."

According to the terms of this Army Regulation, the Class N allotment of the insured was properly terminated as of the end of November, 1950, since no service pay accrued to the insured after that time. No insurance premiums were paid or deducted thereafter.

The District Court was of the opinion that a proper construction of the Regulation was that Class N allotments were to be discontinued only when there was no accrued service pay from which to deduct premiums; that in this case the Government was obligated to continue to pay premiums out of the insured's uncollected service pay; that the offense of being absent without leave could not by regulation be made a ground of forfeiture of National Service Life Insurance; that § 812 of Title 38 U.S.C.A. specifies the only grounds of forfeiture; that Title 38 U.S.C.A. § 802(m) (1) provides that premiums, at the election of the insured, may be deducted from the insured's active-service pay; that the insured had selected that method for the payment of premiums; that so long as there was uncollected active-service pay owing the insured, the Government, notwithstanding his being absent without leave, was required to continue to deduct monthly premiums from his accrued service pay; and that if the Regulation was otherwise construed it would be invalid as contrary to the letter and spirit of the National Service Life Insurance Act permitting an insured to elect to have premiums deducted from his active-service pay.

The contentions of the Government are, in substance, as follows: That November, 1950, was the last month during which pay accrued to the insured from which a premium deduction could be made; that, in discontinuing the insurance allotment, the Army complied with Special Regulation 35–1900–5; that this discontinuance did not forfeit the insurance but transferred to the insured the responsibility for payment of premiums; that under regulations of the Veterans Administration, if an allotment is so discontinued and the premium is not otherwise paid prior to the expiration of the 31-day grace period the insurance lapses, 38 C.F.R. (1949 Ed.) § 8.18; cf. 38 C.F.R. (1949 Ed.) §§ 8.14, 8.16, 8.20; that the applicable regulations were not invalid and the Government was not obli-

gated to apply the insured's accrued service pay to the payment of premiums after he went AWOL; that § 602(m) of the National Service Life Insurance Act, § 802(m) of Title 38 U.S.C.A., does not require the deduction of premiums from uncollected service pay of a serviceman in a nonpay status; that § 802(m) (2), Title 38 U.S.C.A., read in the light of its legislative history, shows that the Army may discontinue insurance allotments even automatically when a serviceman is AWOL; that § 802(m) of Title 38 U.S.C. (1940 Ed.), § 602(m) of the Act, 54 Stat. 1011, as originally enacted in 1940, provided that premiums could, at the election of the insured, be deducted from his active service pay; that by Section 6 of the Act of August 1, 1946, 60 Stat. 784, § 602(m) was amended by adding the following as subsection (2):

"In any case in which the insured provided for the payment of premiums on his insurance by authorizing in writing the deduction of premiums from his service pay, such insurance shall be deemed not to have lapsed so long as he remained in active service prior to the date of enactment of the Insurance Act of 1946 [August 1, 1946], notwithstanding the fact that deduction of premiums was discontinued because—

\*  \*  \*  \*  \*  \*

" '(B) the insured was absent without leave, if restored to active duty;' "

that the reason for this addition was stated as follows in the Senate and House Committee Reports:

"Under regulations issued by the War Department, an allotment for deduction of premiums was automatically discontinued if the insured was absent without leave 15 days or more. Upon restoration to active duty, the individual was not advised that his allotment had been terminated, nor was he ever offered an opportunity to make a new allotment. Some such individuals also died believing their insurance was in force. In still other cases, a veteran sentenced by court martial was restored to active duty and required to engage in combat, or was killed in combat while confined in a combat area or on a ship engaged in combat. In some instances, insurance had lapsed because the veteran was on a nonpay status. Your committee is of the opinion that payment of insurance benefits should not be denied under the circumstances stated.";

that Congress chose not to invalidate regulations requiring termination of the allotment of servicemen absent without leave, but to relieve them of the consequences of allotment termination in certain specified situations, not applicable to the insured in the instant case.

The Government also contends that the Army Regulation by which the insurance allotment of the insured was terminated is authorized as an adjunct to the allotment system, and is necessary in the proper administration of the Army; that the service branches must be able to adopt reasonable regulations to facilitate the performance of their complex fiscal duties; that Congress has recognized this; that Special Regulation 35–1900–5 does no more than give content to the fiscal meaning of the term "allotment"; that the allotment scheme contemplates a continuing income from which authorized deductions can be made; that the fact that there may remain to an allottee's credit monies owing as the result of past services, from which authorized deductions have already been made, has no significance; that the requirement that deductions be made from currently accruing pay is essential from an administrative standpoint; that under Army regulations an absentee without leave is dropped from the rolls of his organization after three months, and within two days thereafter his service record and allied papers are sent to the Adjutant General in Washington for disposition; that if the Army were to make monthly payments from accrued pay until it was exhausted, the procedure the Army has adopted could not be followed; that, in the instant case, had the insured not

died, the Army would have been obliged to keep his records in an active status for at least 8 months; that his accrued service pay could not be dedicated solely to the payment of premiums; that when a serviceman goes AWOL, expenses incurred in apprehending him are, under Army Regulations, chargeable against him, and his accrued pay stands as security for such indebtedness should it be incurred and also for any other obligations owed the Government; that in the case of a serviceman who has authorized several allotments from his pay and who absents himself without leave, it would be impracticable to determine how his accrued pay for past service should be applied.

The Government also contends that under Form DD 234, executed by the insured, the Army was merely called upon to deduct from his monthly pay a monthly premium of $7.20; that it lawfully could have done no more than that; and that, after the insurance allotment was terminated, the Government was under no obligation to apply his accrued service pay, which was thereafter in no way related to his insurance, to the payment of premiums on his National Service Life Insurance.

Section 802(m) (1) of Title 38 U.S. C.A., so far as pertinent, provides:

"The Administrator [of Veterans' affairs] shall, by regulations, prescribe the time and method of payment of the premiums on such insurance, but payments of premiums in advance shall not be required for periods of more than one month each, and may at the election of the insured be deducted from his active-service pay or be otherwise made: * * *"

The provisions of the Regulation of the Veterans Administration pertinent to the instant case are as follows (Section 8.18 of 38 C.F.R., 1949 Ed.) :

"National Service life insurance will lapse and terminate while the insured is in the active military or naval service of the United States:

\* \* \* \* \* \*

"(b) * * * if the service department shall discontinue the allotment [for payment of premiums] and premium is not otherwise paid prior to expiration of the grace period."

If the insured's allotment was lawfully discontinued by the Army as of November 30, 1950, his National Service life insurance lapsed for nonpayment of premiums on January 1, 1951, pursuant to the above quoted regulation, unless it is inconsistent with the National Service Life Insurance Act. Regulations of the Veterans Administration, if consistent with that Act, have the force of law and are a part of the contract of insurance. Jones v. United States, 8 Cir., 189 F.2d 601, 602.

Since the discontinuance of the insured's allotment was not a forfeiture of his insurance, the controlling question, we think, is whether the Army regulation pursuant to which his allotment was terminated, and the regulation of the Veterans Administration providing for the lapse of his policy if the allotment was terminated and if premiums were not otherwise paid, are invalid.

The Veterans Administration, in adopting the regulation providing for the lapse of policies where allotments had been discontinued, seems to have done nothing more than Congress did when, in amending § 802(m) of Title 38 U.S.C., § 602(m) of the Act, it recognized that the Army, pursuant to its regulations, was discontinuing the insurance allotments of servicemen who were in a nonpay status. We think the regulation of the Veterans Administration is valid.

That leaves for consideration the question whether the Army was obliged to continue in effect the insurance allotment of an insured who went AWOL but had to his credit uncollected accrued service pay, and to deduct insurance premiums from such pay so long as it lasted. That is the troublesome question in this case.

From the viewpoint of the District Court, § 802(m) (1) of Title 38 U.S.C.A.,

permitting an insured to elect to have premiums deducted from active-service pay, means that so long as he has service pay current or accrued the Government must deduct premiums, and that only when all accrued pay is exhausted can his insurance allotment and the payment of premiums be discontinued. From the viewpoint of the Government, an insurance allotment is an authorization to deduct monthly premiums from monthly pay, and when monthly pay ceases there is no obligation and no authority to continue premium payments out of accrued pay from which premiums have already been deducted for the months the pay was earned. The question whether the Army regulation is consistent with § 802(m) (1) of Title 38 U. S.C.A. is not free from doubt, and there can be an honest difference of opinion about it.

■ The Army regulation requiring the discontinuance of the allotments of servicemen who absent themselves without leave is not an unreasonable one, has apparently been long established, and has received recognition from Congress. We feel justified in resolving in favor of its validity and effectiveness whatever doubts we might otherwise entertain.

■ If the insured had made no insurance allotment his accrued service pay would not have been available to continue his insurance in force, for the reasons stated in Mikell v. United States, 4 Cir., 64 F.2d 301, 302, in which it was said that "an insured who defaults in the payment of premiums on a government policy is not entitled to have his insurance continued in force merely because in some of its various activities, not connected with insurance, the government is indebted to him." The case of United States v. Morrell, 4 Cir., 204 F.2d 490, 36 A.L.R.2d 1374, certiorari denied 346 U.S. 875, 74 S.Ct. 128, is not to the contrary. In that case it appeared that the insured, before his death, had paid premiums which he was entitled to have waived and which, if applied to his policy, were sufficient in amount to have carried it in force until his death. The credit to which the insured was held entitled in that case constituted, in effect, an overpayment of premiums and was directly related to his insurance contract.

■ The District Court was of the opinion that the cases holding that a fund not related to insurance may not be applied to the payment of premiums are inapplicable to the instant case because the "plaintiff is only seeking to have the accrued active service pay, which is the fund specified by statute and by the insured's application for insurance, used for the payment of premiums." But if the insured's insurance allotment was lawfully discontinued as of November 30, 1950, after he had absented himself without leave, his accrued service pay would, we think, be no more related to his insurance than it would have been had he made no such allotment, and was not available for the payment of premiums.

■ The plaintiff contends that because after the insured's death the Secretary of the Army issued to the father of the insured a Certificate of Honorable Service, which is issued to the nearest of kin in recognition of services rendered by those who die in line of duty while in active military service, that excused the insured's absence without leave and nullified the termination of his allotment.

The insured, at the time of his death, had either a matured policy or a lapsed policy. What happened after his death had, we think, no materiality relative to the question before us for review.

Our conclusion is that the judgment appealed from should be reversed. The question of the validity of the regulations applicable to this case is important to the plaintiff and to the Government. The plaintiff, if she elects to do so, may apply to the Supreme Court for certiorari without payment of any further Clerk's fees or costs in this Court.

The judgment appealed from is reversed and the case is remanded with directions to enter judgment for the United States.