Mildred E. Cooper LILES, nee Mildred E. Cooper, and Mary Ellen Cooper Watson, nee Mary Ellen Cooper, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 529.

United States District Court
E. D. North Carolina,
Wilson Division.

July 8, 1957.

Valentine & Valentine, Nashville, N. C., for plaintiffs.

Jane A. Parker, Asst. U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

This is an action for recovery of National Service Life Insurance benefits. The plaintiffs, Mildred E. Cooper Liles and Mary Ellen Cooper Watson, are sisters of the deceased soldier, Lee Francis Cooper, Jr. Peoples Bank & Trust Company was guardian of the minor plaintiffs, but both have now come of age and are before the Court in their individual capacities. The plaintiffs are residents of this district. It is admitted by the Government that the plaintiffs exhausted their administrative remedies with the

Veterans' Administration and that they have in every way met the conditions prescribed by Title 38 U.S.C.A. § 817 and § 445 to give this Court jurisdiction. It is likewise admitted that premiums deducted from the insured's army pay covered the date of death, May 21, 1952.

The Government's sole defense is based on Title 38 U.S.C.A. § 812, which says: "Any person guilty of * * * desertion * * * shall forfeit all rights to insurance under this subchapter." The basic piece of evidence offered to substantiate this defense is the following notation in the morning report: "Cooper Lee F. RA 14313858 Cpl AWOL since 11 Apr 52 to be dropped from rolls as a deserter (re M/R 11 Apr 52) – 10 May 1952."

■ An excerpt from the Government's brief states that: "Administrator's Decision No. 483, dated November 22, 1941, Decisions of the Administrator of Veterans' Affairs, Vol. 1, p. 707, is to the effect that where an insured is reported by the service department concerned to be a deserter who died while in that status without trial, the service department's record of desertion remaining unchanged may be accepted as the necessary finding of guilt so as to support a declaration of forfeiture of National Service Life Insurance." I have no quarrel with the Administrator's policy. It provides what is probably the most feasible way for his organization to operate. However, the Court is not bound by his decision. Title 38 U.S.C.A. § 808; United States v. Zazove, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601. Rather it is incumbent upon the Court to consider all evidence available in order to determine whether the insured was guilty of desertion.

■ What weight, if any, should be accorded a morning report as evidence of desertion? In Smith v. United States, D.C.Mont.1941, 32 F.Supp. 657, 660, the Court had under consideration a similar but distinguishable forfeiture provision under the War Risk Insurance Act, Title 38 U.S.C.A. § 447, and concluded that "the record is prima facie evidence of

the desertion", citing 3 Comp.Gen. 691, 4 Comp.Gen. 36, 4 Comp.Gen. 171, and 5 Comp.Gen. 857. (See also 3 Comp.Gen. 465.) It is important to note, however, that the overall military "record" referred to in the Smith case reflected circumstances from which both essential elements of the offense could be fairly inferred. These circumstances were that the insured had escaped from confinement imposed for desertion, remained at large for over a month, and then obtained admission to a military hospital under an assumed name.

Similarly, the decisions of the Comptroller General cited in connection with the Smith case have a more substantial support from the military record than can be found in the one on which the Government presently relies. The terse memorandum from the morning report by its terms recites no fact of which it could be prima facie evidence but that Lee Cooper had been AWOL since April 11, 1952. The directive that he be dropped from the rolls as a deserter was at most only a charge against him.

■ Article 85, Uniform Code of Military Justice, Title 50 U.S.C.A. § 679, defines desertion in the following language: "Any member of the armed forces of the United States who—(1) without proper authority goes or remains absent from his place of service, organization, or place of duty *with intent to remain away therefrom permanently* * * * is guilty of desertion." This section is now found in Title 10 U.S.C. § 885, with minor changes in terminology. Title 50 U.S.C.A. § 611 (now Title 10 U.S.C. § 836) empowered the President to prescribe rules "including modes of proof" in cases under the uniform Code of Military Justice, and the interpretation of the code by the President and the military is entitled to great weight. United States v. Shibley, D.C., 112 F.Supp. 734.

The Manual for Courts-Martial, U.S. 1951, issued under the President's authority, points out at page 311 that: "Both the absence without authority and the intent to remain away permanently

are essential elements of the offense. * * * Unless, however, an intent to remain away permanently from his place of duty or service, or from his organization, exists at the inception of, or at some time during, the absence, the person cannot be a deserter guilty of desertion in violation of Article 85(a) (1), whether his purpose is to stay away a definite or an indefinite length of time."

Then at page 313 the Manual deals with the weight to be accorded an entry in the morning report indicating desertion. "Absence without leave is usually proved, prima facie, by entries in the morning report in the case of the Army and Air Force and by entries in the service record or unit personnel diary in the case of the Navy, Marine Corps, and Coast Guard. But these entries, even though they refer to an accused as a 'deserter', are not complete evidence of desertion; they are evidence only of the absence without proper authority and attendant facts and circumstances required to be recorded (see 144b), and it is still necessary to prove the other element of the offense of desertion." Winthrop's Military Law and Precedents, Second Edition, page 641, is to the same effect.

The Government included with its answer, Paragraph 6, Army Regulation 600–120, May 8, 1951, (in part) which says, "An absentee will be accounted for on the rolls of an organization for 29 days from the initial date of unauthorized absence, * * *. At the expiration of the prescribed period the individual will be dropped from the rolls as a deserter."

Also included was Subparagraph g of Paragraph 2, Army Regulation 600–120, May 8, 1951 (in part) which gives the following explanation of the preceding regulation: "This is a strength accounting procedure, *involving a coincident administrative determination of desertion*, but does not effect the individual's discharge from the service."

It is my opinion that Congress, by providing as the condition for forfeiture of National Service Life Insurance policies that the insured be "guilty of de-

sertion", intended that more than a "coincident administrative determination of desertion" based on 29 days absence must be shown to meet the condition. Of course this is not to say that the insured must have been convicted before a court-martial, for a conviction would be impossible after the insured died a deserter. Smith v. United States, supra; Griffin v. United States, D.C., 115 F.Supp. 509, reversed on other grounds, 8 Cir., 216 F.2d 217. What the Government is required to do to establish its affirmative defense in the circumstances before me is to show, at least by the greater weight of the evidence, the essential elements of the offense; and in the attempt to do so the efficacy of the morning report would be the same as before a court-martial—to wit, it would stand as prima facie evidence of the absence.

"The intention could be proved only by evidence of things the accused did or said from which the Court could infer his intention." War Department Technical Manual, Military Justice Procedure, TM 27–255. For example, in Smith v. United States, supra, the individual in question was living under an assumed name when he died.

██ The burden that rests on the Government is not unreasonable; for as a practical matter, it exists only in a case where the Government seeks to establish the guilt of one who died in the course of a brief absence or shortly after being apprehended and while evidence is fresh. Research by counsel and the Court has not brought to light any other case involving this situation. In the event of an extended absence, military regulations provide for forfeiture of pay, which results in a lapse of the insured's National Service Life Insurance for nonpayment of premiums. The validity and effect of such procedure is amply discussed and upheld in Griffin v. United States, 8 Cir., 216 F.2d 217.

Finding no evidence from which I can infer the indispensable element of intent, I hold that the defendant United States has failed to make out its affirmative defense, on which the defendant had

the initial burden of going forward with evidence. Accordingly, the plaintiffs are entitled to judgment.

However, if I believed that the Government had succeeded in making a prima facie case, the result would be the same. The plaintiffs presented impressive evidence which to my satisfaction negates any implication that Lee Cooper was a deserter.

It was shown that during the time from April 11, 1952, when he was first reported to be absent from his assigned unit, until May 21, 1952, when he died as the result of an auto accident, he lived with his wife first in Fayetteville, N. C. near Fort Bragg where he was stationed pending his discharge which was due in less than one year. He had already served fifteen months in Korea at the height of the conflict. In early May the insured and his wife moved to Raleigh, N. C., where the wife enrolled in a beauty culture course that was due to be completed at about the same time that he would have been discharged.

Each weekday morning he left home with the stated intention of reporting for duty at Fort Bragg, and he made frequent references in conversation to his duties there. A witness testified that Cooper, in uniform, took him into Fort Bragg on April 15, 1952, and was checked in at the gate by a guard, before going to a building which Cooper entered for the announced purpose of obtaining the permission of his sergeant to take the day off.

The insured represented himself to the general public as being a soldier. He gave "Army" as his occupation on an automobile insurance form to cover a car he purchased on April 25th. His uniform was worn almost daily, or when not being worn it was frequently hung neatly over the rear seat of his car for all the world to see. That is where it was on the night of the fatal accident. His polished boots lay on the floor. Wear and display of the uniform alone refutes the idea that Lee Francis Cooper was "guilty of desertion".

At the date of his death two policies, No. V 81–06–11 and No. V 1470–61–68, each in the amount of $10,000, were in force on the insured's life. It was stipulated that any recovery be limited to the sum of $5,000 on each policy. Judgment shall be entered accordingly for the plaintiffs as their respective interests appear. However, interest and costs may not be recovered by the plaintiffs in an action in which jurisdiction is founded on Title 38 U.S.C.A. § 445, United States v. Barnett, 5 Cir., 230 F.2d 926. The Veterans' Administration shall pay ten percent of the amount recovered to the plaintiffs' attorneys, which amount the Court finds to be a reasonable fee to be allowed for their services. Title 38 U.S.C.A. § 551.