## SMITH *v.* UNITED STATES.

No. 742. Argued May 9, 1934.—Decided May 21, 1934.

*Mr. James J. Crossley* for petitioner.

*Mr. Will G. Beardslee,* with whom *Solicitor General Biggs, Assistant to the Attorney General Stanley,* and *Messrs. Wilbur C. Pickett* and *W. Marvin Smith* were on the brief, for the United States.

Mr. Justice McReynolds delivered the opinion of the Court.

By complaint filed in the District Court for Oregon, May 22, 1929, petitioner sought judgment against the United States for benefits said to have accrued to her under War Risk Insurance taken out by her son, Elias Melvin Zimmerman, in 1917. While enlisted in the Naval Service he died aboard the U.S.S. " Conestoga " June 30, 1921.

The United States denied liability upon the ground that the policy lapsed for nonpayment of premiums and was not in force after April 30, 1918.

By agreement the cause was tried without a jury. The District Court gave judgment for the complainant— petitioner here; the Circuit Court of Appeals reached a different conclusion and ordered reversal.

There is no dispute in respect of the essential facts.

Zimmerman enlisted in the Navy March 18, 1914, as an apprentice seaman and was honorably discharged at the expiration of his term March 17, 1918; he re-enlisted March 18, 1918, and received an honorable discharge September 15, 1919; he enlisted again September 16,

1919, and served until death. He held a continuous service certificate; but when this was actually received does not appear.* War Risk insurance amounting to $10,000 issued upon his application dated December 3, 1917, which contained the following clause, never formally revoked—" I authorize the necessary monthly deduction from my pay, or if insufficient, from any deposits with the United States in payment of the premiums as they become due, unless they be otherwise paid."

The policy provided for monthly payments in the event of death or total disability occurring while it remained in force. It designated petitioner as the beneficiary. A Bulletin issued by the Director of War Risk Insurance, as authorized by the War Risk Insurance Act, 40 Stat. 398, 409, in force when the policy became effective, contained the following regulation:

" Premiums shall be paid monthly on or before the 1st day of each calendar month and will unless the insured otherwise elects in writing be deducted from any pay due him from the United States or deposit by him with the United States and if so to be deducted a premium when due will be treated as paid whether or not such deduction is in fact made, if upon the due date the United States owe him on account of pay or deposit an amount sufficient to provide the premium; provided that the premium may be paid within thirty-one (31) days after the expiration of the month during which period of grace the insurance

---

* Navy Regulations, 1913.

" Paragraph 3529 (1)—Any man who, having been honorably discharged, or discharged with a recommendation for reënlistment, shall within four months thereafter reënlist for four years shall receive in exchange for his discharge a continuous service certificate. . . .

" Paragraph 4427 (22)—If any enlisted man or apprentice, being honorably discharged, shall reënlist for four years within four months thereafter, he shall, on presenting his honorable discharge or on accounting in a satisfactory manner for its loss, be entitled to a gratuity of four months' pay equal in amount to that which he would have received if he had been employed in actual service. . . ."

shall remain in full force "; also " In case the applicant does not desire the premium to be deducted from his pay he should so state in writing at the time of making application; but if no election is made it shall have the effect to provide for such deduction from his pay or if such pay be insufficient any balance from his deposit."

Payments due upon the policy were met by deductions of $6.50 monthly from the assured's pay until the end of his first enlistment. Thereafter no deduction was made; he executed no new authorization for deductions; no premium was actually met. He was entitled to pay for every day from March 18, 1914, until his death.

When honorably discharged from his first enlistment Zimmerman received the full amount then due him; also, when discharged from his second enlistment. All pay due at his death was received by his mother, the petitioner. The records of the Navy Department " disclose that he never made any allotment for War Risk Insurance Premiums other than the authorization for deduction of premiums at the time of his application for insurance."

Petitioner insists that although no premium upon the policy was actually paid after March, 1918, it nevertheless remained in full force and effect during the assured's active service because of the unrestricted authorization for deductions in his application of December 3, 1917, never thereafter revoked in writing, since there was due him at the end of each month enough to meet the required premiums and the Navy Department was under a duty to make proper deductions.

In behalf of the United States the insistence is that the authorization for deductions was ineffective after the expiration of the first enlistment during which it was given. Moreover, that the action of the assured in accepting his pay without deduction for premiums during all of his second and third enlistments—more than three years—is enough to show acquiescence in the contempo-

raneous construction by the administrative officers; and, no circumstance indicating the contrary, this establishes his purpose to surrender the contract as he properly could have done.

We are of opinion there is enough to show abandonment of the contract by the assured and upon that ground the judgment of the Circuit Court of Appeals should be affirmed.

After expiration of the first enlistment, neither party to the contract appears to have treated as operative the authorization for deductions contained in the application. Zimmerman accepted every month during a considerable period the full amount due him; made no effort to provide for payment of premiums when he must have been aware that no deduction had been made. There is nothing to indicate that he did not have full possession of his faculties or lacked intelligence or probity, or that he was unaware of the important circumstances. If he had supposed the insurance remained in effect, common honesty would have moved him to provide for actual payment of the premiums. He must have known they had not been met. In the circumstances his conduct, we think, adequately indicates the exercise of his right to abandon the policy. See *Sawyer* v. *United States,* 10 F. (2d) 416; *United States* v. *Barry,* 67 F. (2d) 763; *contra, Unger* v. *United States,* 65 F. (2d) 946.

The challenged judgment must be

*Affirmed.*