## WEISS v. UNITED STATES.

### No. 192, Docket 21936.

United States Court of Appeals
Second Circuit.

Argued Feb. 16, 1951.

Decided March 7, 1951.

Sidney Morse, of Brooklyn, N. Y., for plaintiff-appellant.

Thomas E. Walsh, Atty., Dept. of Justice, of Washington, D. C. (Frank J. Parker, U. S. Atty., and Nathan Borock, Asst. U. S. Atty., both of Brooklyn, N. Y., Newell A. Clapp, Acting Asst. Atty. Gen., and D. Vance Swann, Atty., Dept. of Justice, of Washington, D. C., on the brief), for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The plaintiff, Adele Weiss, is the sister of a veteran Eugene Morse who, while serving in the Armed Forces of the United States, took out two certificates of level premium term National Service Life Insurance, each for $5,000, naming her as beneficiary. He was honorably discharged on December 7, 1945, and died on August 27, 1948, having failed to pay the premiums after March 31, 1947—a period of some seventeen months. She brought suit for the proceeds, the government moved for a dismissal on the ground that, as the complaint disclosed, the insurance had lapsed, and the district court granted the motion. She now appeals. There is no dispute in these underlying facts and the case is to be decided upon the basis of the governing statute and the regulations issued thereunder. The plaintiff does not deny, indeed herself pleaded, the non-payment of the

premiums; rather for the keeping in force of the insurance she relies upon (1) the existence of an insurance reserve based upon unearned premiums or undeclared dividends sufficient and effective for the purpose or (2) the insured's total disability for injuries during the period and consequent waiver of the premiums as provided by law. The government's defense is that the regulations issued pursuant to law explicitly prohibit such an interpretation of the obligations which were placed upon it in the issuance of veterans' insurance.

■ In accord with the district judge we think this defense complete and unanswerable and regard the plaintiff's contentions as based upon a form of governmental contract which, however equitable it might be considered, would be distinctly other than was actually proffered. The learned judge first wrote a reasoned opinion and then a supplemental opinion after he had given opportunity to the parties to submit later rulings, if any, of the Administrator of Veterans' Affairs. 92 F.Supp. 322. We agree with his rationale and find little more to say. Before turning to the statute and regulations, we may note that the appeal is in form from four district court orders: the dismissal of the complaint for failure to state a claim upon which relief can be granted, the denial of a motion for reargument, the denial of leave to amend, and the denial of an order compelling delivery of certain regulations to the plaintiff. The second and third appeals are but iterations of the main point of law to which we shall now address ourselves. As to the fourth, whether or not there was any improper denial to plaintiff of the governing literature of the case, we now have all the material presented to us and this particular side issue has obviously become moot.

The National Service Life Insurance Act, passed in 1940, provided for the granting to persons in active service, upon application and payment of premiums, of insurance on the five-year level premium term plan. 38 U.S.C.A. § 802(a). The Act went on to provide, *inter alia,* for the setting of premium rates upon "the net rates based upon the American Experience Table of Mortality and interest at the rate of 3 per centum per annum," § 802(e); for the privilege of conversion of the term insurance into other plans upon payment of the difference in reserve within the five-year-term period, § 802(f); for the establishment of a permanent trust fund in the United States Treasury, known as the National Service Life Insurance Fund, to receive the premiums paid in, together with interest, to be available "for the payment of liabilities under such insurance, including payment of dividends and refunds of unearned premiums. Payments from this fund shall be made upon and in accordance with awards by the Administrator," § 805(a); and for the power to the Administrator "to make such rules and regulations, not inconsistent with the provisions of this chapter, as are necessary or appropriate to carry out its purposes," § 808.[1] Regulations, 38 CFR, 1941 Supp., §§ 10.3414–10.3416, provided for grace periods of 31 days for the payment of any premium, cited the method of computation of the period, covering such matters as its expiration on Sunday or a legal holiday, and concluded in § 10.3416: "If any premium be not paid when due, the National Service Life Insurance policy shall cease and become void, except as otherwise provided in the policy."

With respect to dividends the Act in the subdivision cited above providing for conversion into other form of life policies then stated: "All five year level premium term policies shall cease and terminate at the expiration of the five year term period. Provisions for cash, loan, paid up, and extended values, dividends from gains and savings, refund of unearned premiums, and such other provisions as may be found to be reasonable and practicable, may be provided for in the policy of insurance or from time to time by

---

[1]. Several of the provisions cited here and below have been expanded or elaborated by amendments, notably in 1946 and 1947; since the changes do not affect the substance of the issues here involved, citation of detail appears unnecessary.

regulations promulgated by the Administrator." § 802(f). No dividends were, however, declared for many years. Indeed this delay in the declaration of dividends is made one of the grounds of complaint by the plaintiff. It was explained by defendant on the ground that for the duration of the war the government's liability could not be accurately determined and thereafter it was placed in doubt by the decision in Zazove v. United States, 7 Cir., 162 F.2d 443, which threatened to enlarge it "by billions" until reversal on June 14, 1948, in United States v. Zazove, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601. A regulation promulgated in the spring of 1949, 38 CFR, 1949 Ed., § 8.26a, provided: "Any special National Service life insurance dividend that may be declared shall be paid in cash only. Such special dividends shall not be accepted to accumulate on deposit. Unpaid special dividends shall not be available to pay premiums." An earlier regulation, 38 CFR, 1949 Ed., § 8.26, had provided that dividend accumulations and unpaid dividends should not be available for the payment of insurance premiums except at the written request of the insured made before default in payment of a premium—a request, of course, never made by this insured.[2]

The plaintiff discounts these clear indications of administrative policy by saying that she is not relying upon declared and accumulated dividends, but rather upon the Administrator's breach of duty in failing to declare dividends. Her contention is that there had been built up in the National Service Life Insurance Fund a reserve on these certificates on the basis of premiums paid in which, not having been declared as dividends, must now be treated as applicable upon these certificates to render them fully paid-up policies for a period beyond the time of the death of the insured. This theory appears to have been developed because of the Administrator's present program of paying certain dividends in cash upon all policies, even those which had lapsed. In view of this there may perhaps be some fireside equity in the concept that instead of cash payments available now the money should have been used to keep the main policies alive so long as possible. Be that as it may, we do not see how that can be made a compulsion upon the government when the regulations under the statute, having the force of law because quite consistent with it, are so obviously based on the contrary principle. Provisions as to lapse are necessary if the scheme of requiring premiums from the veterans for their insurance is to be given any force at all. The further restriction upon the use of dividends is a natural and perhaps a necessary bookkeeping development under the circumstances under which dividends were contemplated and were eventually granted. Presumably the Administrator could not have undertaken the responsibility of declaring dividends even when he did if his act was to have the effect of reviving innumerable policies already lapsed. Nor is there anything apparent in the legislation requiring the earlier declaration of dividends while the liability of the government was thus inchoate. The cases arising after World War I, and to date after the last war, seem quite clear that payments, including dividends, on veteran policies are to be only as the governing regulations provide and that the United States cannot be held estopped into other or greater payments. United States v. Huie, 5 Cir., 73 F.2d 305; James v. United States, 4 Cir., 185 F.2d 115; United States v. Norton, 5 Cir., 77 F.2d 731; Wilber Nat. Bank of Oneonta, Adm'r, v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798. Several recent unreported cases in the district courts have also been cited to us. We have therefore no doubt but that the plaintiff's contention cannot be supported.

■■ Her second ground of suit, namely, that the insurance was in force at the insured's death because of waiver of premi-

2. See also the provisions of 38 C.F.R., 1947 Supp., § 10.3426 that dividends "will be paid in cash except that at the request of the insured they may be left to accumulate on deposit provided the policy is in force on a basis other than extended term insurance or level premium term insurance"—a distinction made between different types of insurance which is carried into §§ 10.3428–10.3430.

ums for disability, stands in no better shape. The allegations of the complaint fall far short of meeting the conditions set in the Act itself, § 802(n), as amended, of continuous total disability of the insured, "which continues or has continued for six or more consecutive months" subsequent to his application and "while the insurance was in force under premium-paying conditions," and of application by the insured within the times specified. These conditions are not in any way removed or nullified by the provisions of § 807(b) for the bearing of the cost by the United States beyond the amount of reserve of the policy.

Affirmed.