## UNITED STATES v. JONES.

### Civ. No. 583.

United States District Court
S. D. West Virginia, Huntington Division.
Sept. 28, 1951.

A. Garnett Thompson, U. S. Atty. of Charleston, W. Va., and Milton J. Ferguson, Asst. U. S. Atty., of Huntington, W. Va., for plaintiff.

Duncan W. Daugherty, Sr., and Duncan W. Daugherty, Jr., both of Huntington, W. Va., for defendant.

WATKINS, District Judge.

Plaintiff seeks to recover $5,798.00 which it says the United States paid to defendant by mistake. The money was paid to defendant as the beneficiary of a National Service Life Insurance policy. Plaintiff contends that the policy had lapsed prior to the death of the insured by reason of (1) failure to pay premiums and (2) termination of military service. Upon re-enlistment the insured stated in writing "no insurance desired", and no premiums were deducted from his pay under his second enlistment. By reason of a mistake and mix-up in serial numbers his policy under his first enlistment was not cancelled, and the beneficiary was paid the sum of $5,798 by mistake. The only issue to be decided is whether the policy of insurance was in force at the death of insured on September 2, 1947. The material facts are not in dispute.

### Findings of Fact.

1. Joseph Lee Jones, the decedent, entered the armed services of the United States on or about April 20, 1943. A policy of National Service Life Insurance in the face amount of $10,000 was issued to him, with his mother, Dora Ann Jones (defendant herein) as beneficiary. He signed an allotment authorizing the United States to deduct $7.30 per month from his pay to take care of the premiums on this insurance.

2. He was discharged from the armed services of the United States on October 20, 1945. On October 26, 1945, he re-

enlisted in the United States Army and remained in service until the date of his death on September 2, 1947.

3. After his death defendant was paid monthly payments under the insurance policy amounting to $5,798 when it was determined that the policy had lapsed on September 30, 1945, and was not in force at date of his death and that the payments to defendant had been made by mistake. Demand was made upon defendant on August 22, 1950 to return this money, and when defendant failed to do so, this suit was instituted.

4. About the time the decedent re-enlisted in the Army on October 26, 1945 he signed a paper on which was stamped "no insurance desired". This paper is dated November 1, 1945, and was the usual allotment form which he would have filled out had he desired to carry insurance. Instead of filling out the form and thereby authorizing deductions from his pay of $7.30 per month to cover his insurance premiums, as he had done on his previous enlistment, he did not fill in the blank form, but signed the form with the words "no insurance desired" stamped across the form. On July 1, 1946 he signed "Insurance Refusal Form", stating that he understood that he was entitled to carry $10,000 of National Service Life Insurance but that he carried none, and that his reason for not carrying the $10,000 of Government insurance was "cannot afford". Decedent had not authorized any deductions to be made from his pay for insurance, and no deductions were made during his second enlistment. By reason of a mistake and mix-up in serial numbers the lapsed insurance policy under his first enlistment was not cancelled on the books of the Veterans' Administration and upon his death the beneficiary was paid monthly payments until the mistake was discovered. The mistake came about in the manner hereafter described.

(a) Upon the discharge of decedent from service under his first enlistment at the Separation Center, Fort Meade, Md., on October 20, 1945, the officers there prepared and sent to the Department of the Army the customary Allotment Discontinuance Notice (Form 30–S), the purpose of which was to notify the Army that decedent was no longer in the service, and that the allotment of $7.30 per month out of his pay for insurance should be discontinued as of September 30, 1945. However, in copying decedent's serial number on this notice someone at the Fort Meade Separation Center made a clerical mistake in the second digit of the serial number, showing it to be 14,056,761 instead of 15,056,761, the correct serial number. Because of the large number of men in the military service, some of them with exactly the same name, an enlisted man is identified by his serial number rather than his name. When this Allotment Discontinuance Notice reached the Army Finance Center, it was not associated at that time with decedent's account due to the serial number discrepancy, and as a result therof decedent's allotment account still remained active, and each month thereafter the Department of the Army continued to pay the Veterans' Administration the sum of $7.30 per month on account of this policy, although nothing was deducted from decedent's pay. The mistake was discovered upon receipt of notice of death by the Department of the Army. It was evident that some administrative error existed but it was not until the service record was forwarded to the Adjutant General by the decedent's organization that the Army was able to determine the correct allotment status. The allotment payments to the Veterans' Administration were immediately discontinued, and an AFC Form 8–155 was initiated, whereby the erroneous premium payments of $167.90 were withdrawn by the Army from the Veterans' Administration.

(b) Prior to 1942, insurance premiums on this type of insurance were paid by the service man by authorizing a "deduction" from his pay. This worked somewhat satisfactorily until so many men were inducted into the service in World War II. If a man was in the service in England, it was necessary that his payroll account over there be verified and sent here before the deduction could be paid by the Army to

the Veterans' Administration, thereby causing delay of many months in the actual payment of his premiums to the Veterans' Administration. Because of this condition and the millions of men to be inducted into the service, the "allotment" system was inaugurated to take the place of the "deduction" system. Each man who desired to carry government insurance signed a paper whereby he made an allotment of a portion of his pay to take care of the monthly premium on his insurance. This was the authorization of the government to deduct the specified amount from his pay. The allotment continued indefinitely until discontinued by (1) death, (2) absence without leave or desertion, (3) discharge or separation from service, or (4), request of assured. Upon separation from service the allotment terminated because the allotment only authorized deductions during period of service, and for the further reason that there would be no fund available out of which to pay the allotment.

(c) In order to provide for prompt payment of premuims to the Veterans' Administration by the Army for the millions of men coming into the service, under the "allotment" system, the Department of the Army advanced each month to the Veterans' Administration a fund sufficient to cover all insurance premiums for all men in the army who had active allotment accounts, until such time as the various pay roll accounts could be made up in the field, and certified to the Department of the Army in Washington, sometimes taking eleven or twelve months. When the pay-rolls were certified and received, proper credit or debit was made in the monthly account of the Veterans' Administration and the Army for any overpayments or underpayments by reason of death, separation from service or any other type of error.

(d) Because of the typographical error in the serial number placed on the Allotment Discontinuance Notice, decedent's allotment account remained active and each month thereafter until his death, the Army mistakenly continued to advance to the Veterans' Administration sufficient funds to cover his insurance premiums, although the insured did not intend to carry insurance, and although no premiums were deducted from his pay.

5. The Administrator of Veterans' Affairs had made no official determination or declaration of dividends affecting this policy prior to the insured's death on September 2, 1947, or prior to the commencement of insurance payments to the beneficiary on February 11, 1948. Therefore, there were no dividends out of which the premiums could be paid.

6. The allotment signed by decedent terminated upon his separation from service on October 20, 1945. No premiums were paid by him or by anyone for him after that date, and his insurance lapsed for nonpayment of premiums. He did not sign a new allotment and thereby subscribe for insurance because he could not afford it, and did not desire to carry insurance, as stated by him in writing on two different occasions. Decedent knew that he had no insurance in force during his second enlistment. Plaintiff made demand upon defendant for repayment of the sum of $5,-798 on August 22, 1950.

## Conclusions of Law.

1. The terms of this insurance contract, and the rights and liabilities of the parties are fixed by the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq., and the authorized administrative regulations promulgated in conformity with the Act, which regulations, if consistent with the Act, have the force and effect of law and are provisions of the insurance contract binding upon the assured. Jones v. United States, 8 Cir., 189 F.2d 601.

2. The National Service Life Insurance Act of 1940 set up a permanent trust fund in the Treasury of the United States, known as the National Service Life Insurance Fund, to which all premiums on National Service Life Insurance are credited, and the fund is made available "for the payment of liabilities under such insurance, including payment of dividends and refunds of unearned premiums. Payments from

this fund shall be made upon .and in accordance with awards by the Administrator." Sec. 805(a). One of the regulations promulgated by the Administrator was as follows: "If any premium be not paid when due, the National Service life insurance policy shall cease and become void, except as otherwise provided in the policy." Sec. 8.16, 38 C.F.R., 1949 Ed., p. 223.

Another regulation provided as follows: "Any special National Service life insurance dividends that may be declared shall be paid in cash only. Such special dividends shall not be accepted to accumulate on deposit. Unpaid special dividends shall not be available to pay premiums." Sec. 8.26a, 38 C.F.R.1949, Supp., p. 64.

3. After the termination of his allotment authorization by separation from the service, the Army could not lawfully make subsequent deductions from his pay to cover his insurance, and such authorization is not automatically reinstated upon a subsequent enlistment. Smith v. United States, 292 U.S. 337, 54 S.Ct. 721, 78 L.Ed. 1295, and United States v. Barry, 6 Cir., 67 F.2d 763, certiorari denied 292 U.S. 648, 54 S.Ct. 857, 78 L.Ed. 1498.

4. Even if the Administrator had declared dividends prior to insured's death, such dividends could not have been applied retroactively to the payment of premiums in default. Weiss v. United States, 2 Cir., 187 F.2d 610; Ferrara v. United States, D.C., 100 F.Supp. 951.

5. The money forwarded by the Army to the Veterans' Administration, sufficient to cover the premiums on this insurance from the time of insured's second enlistment to the date of his death, were overpayments in the accounts of these two agencies of the United States, made under a mistake of fact and did not constitute payment of premiums. The insurance lapsed and terminated at the end of his first enlistment for non-payment of premiums.

6. Judgment is rendered in favor of the United States for the sum of $5,798, with interest from the 22d day of August, 1950.