**BOUVIER v. UNITED STATES.**

No. 13401.

United States Court of Appeals Ninth Circuit.

June 30, 1954.

---

3. 28 C.J.S., page 574.

Melvin E. Cohn, Michael Aaronson, San Carlos, Cal., for appellant.

Warren E. Burger, Asst. Atty. Gen., Melvin Richter, Washington, D. C., Katherine Kilby, Arlington, Va., Attys., Department of Justice, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and POPE and LEMMON, Circuit Judges.

DENMAN, Chief Judge.

Bouvier appeals from a judgment in her suit against the United States on her husband's National Service life insurance policy N 18–30–55, hereafter policy 055, issued by the Veterans Administration,[1] hereafter the Insurer, holding that the policy had expired by the nonpayment of premiums.

Prior to January 1, 1941, Bouvier had this policy and another, N 229–18–46, hereafter policy 846. The premium on each was $3.25 payable monthly. In December of 1948, insured was notified that policy 055 would expire on February 28, 1949, unless renewed by an application.

The insured, on January 10, 1949, filed applications for renewal of both policies and submitted his check for $6.90, requesting that the check be applied "to cover insurance for $10,000.00." This amount exactly constituted the new premiums required on both policies after renewal.

The Insurer, with whom this application was filed, sent a letter to the insured, dated January 20, 1949, which advised that the payment of $6.90 had been applied $3.25 for the January premium of each of the policies and that the insured had a credit of 40¢ which could be deducted from the next premium. The letter acknowledged that the premium on policy 846 was paid for January, 1949, and that the new premium rate on policy 055 would be $3.45 per month; that it would be necessary to pay the February premium on the *renewed* policy 055 plus the premium for March, which had to be paid before March 1, 1949.

Appellant, the widow and named beneficiary of the insured, mailed her check dated January 21, 1949, to the Insurer in the sum of $6.50.[2] At this time, the next premium payment on policy 846 was not due until February 1, 1949, and because of the grace period provided by the regulations,[3] the policy would not lapse until March 1, 1949; and the payment of $6.50 plus the 40¢ credit exactly equaled the $6.90 necessary to pay the February and March premiums on policy 055 and thus prevent it from lapsing.

Thereafter, neither the insured nor the beneficiary received the usual monthly notices of premiums due on either policy. Amounts equaling the total premiums on the two policies were regularly sent to the Insurer every month. The insured made inquiries of the Insurer, both orally and in letters, but received no reply other than form postcards acknowledging receipt of the letters. On August 15, 1949, insured received a letter from the Insurer stating that policy 055 had

---

1. Acting under the National Service Insurance Act of 1940 as amended 38 U.S. C.A. § 817, hereafter the Act.

2. Appellant contends that this check was sent in response to the letter of January 20, 1949. Appellee contends that it was sent before receipt of this letter. Inasmuch as the postmark of the envelope containing the check was not put in evidence and as testimony as to this postmark was excluded, neither of these assertions is supported by the evidence.

3. Veterans' Administration Regulations §§ 8.14, 8.15, 13 F.R. 7108, 38 C.F.R. §§ 8.14, 8.15.

not been effectively renewed. The insured was away from home when this letter arrived and died on August 27, 1949, as a result of an accident before returning home. Consequently, insured never received this notice.

The Insurer acknowledges that all premiums actually due on each of the policies were fully paid, those for policy 055 being held in a suspense account. The representative of the Insurer testified that the payment made by appellant on January 21, 1949, was applied as a premium on each of the policies; that the whole amount could have been applied to policy 055, and if so done, both policies would have been in force on the date of insured's death.[4]

 We think it was the duty of the Insurer so to treat the funds available for that purpose, nonetheless so because the Insurer is a Governmental organization. Where the Act is open to construction, it is liberally to be construed in favor of the soldier. White v. United States, 270 U.S. 175, 179, 46 S. Ct. 274, 70 L.Ed. 530.

 Here there is no express provision of the Act preventing the application of the amounts of the insured's money held by the Insurer to prevent a forfeiture and the general rule applies that an Insurer should act to prevent such forfeiture. American National Insurance Co. v. Yee Lim Shee, 9 Cir., 104 F.2d 688, 694.

In so holding we are in accord with the Fourth Circuit in United States v. Morrell, 204 F.2d 490, 493–494 and the Fifth Circuit in Kubala v. United States, 210 F.2d 943, 945, both cases holding on similar policies that such duty to prevent a forfeiture in no way involved the contention pressed by the Insurer that so to hold constituted an estoppel against the Government.

The judgment is reversed and the district court ordered to enter judgment for the appellant.

4. Even though policy 846 might have lapsed within five weeks of the date of the receipt of this payment, the policy could easily have been reinstated whereas policy 055 was not reinstatable after March 1, 1949.