Lawrence GRAY, Administrator of the Estate of Mildred Reed Wood, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15118.

United States Court of Appeals Ninth Circuit.

Feb. 14, 1957.

Charles Elwyn Karpinski and David S. Casey, San Diego, Cal., for appellant.

Laughlin E. Waters, U. S. Atty. and Max F. Deutz, Hiram W. Kwan, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before ORR, FEE and CHAMBERS, Circuit Judges.

ORR, Circuit Judge.

Lawrence C. Reed, now deceased, was for almost twenty-three years a member of the armed forces of the United States. He retired from active service in the Army on December 31, 1947. From June 1, 1943, until December 31, 1947, the date of his retirement, there was deducted, pursuant to his authorization, from his Army pay premiums due on a National Service Life Insurance policy.

Upon his retirement Reed indicated on his retirement certificate that he desired to continue his National Service Life Insurance allotment from his retirement

pay.[1] However, until his death thirteen months later, Reed received his retirement pay without an allotment for the premiums. This was due to the apparent neglect of the Army paymaster in the Canal Zone at which place he had retired from the active service.

Subsequent to the death of Lawrence Reed, Mildred Reed Wood, the beneficiary named in the policy, made a claim for the proceeds of the insurance. The claim was disallowed by the Veterans' Administration on the ground that the said insurance policy had lapsed. An appeal was dismissed by the Board of Veterans' Appeals. Thereafter Mrs. Wood filed suit for recovery of the proceeds under the National Service Life Insurance Act of 1940.[2] The District Court sustained the contention of the Government that the insurance policy had lapsed for non-payment of premiums and denied relief.

§ 608 of the National Service Life Insurance Act places administration of the Act with the Administrator of Veterans' Affairs, and gives said Administrator power to provide rules and regulations, consistent with the purposes of the Act, for its administration. See 38 U.S. C.A. § 808.

For the purpose of facilitating the collection of premiums, a plan was devised between the Veterans' Administration and the Army whereby the Army would, under proper authorization from the Veterans' Administration, make the necessary deductions from Army pay in order to pay premiums and thus prevent the insurance from lapsing. The monthly premiums thus deducted were placed to the credit of the Veterans' Administration.[3]

It will be noted that at the time of Reed's retirement that regulations did

---

1. Reed signed an AGO 53–94 Form upon retirement. The following instruction appeared on the form:

   "Important—If the premium is not paid when due or within thirty-one days thereafter, insurance will lapse. Make checks or money orders payable to the Treasurer of the U. S. and forward to Collections Subdivision, Veterans Administration, Washington 25, D.C. **or authorize deduction from retirement pay.**" (Boldface supplied).

   Under the instruction, Reed placed an "X" in the box indicating "Intention of Veteran to Continue Payment Deducted from Retirement Pay."

2. 38 U.S.C.A. § 801 et seq.

3. Veterans' Administration Regulations, 38 C.F.R. § 10.3406, (Cum.Supp.1943, 7 F.R. 6746) provided:

   "Premiums on National Service Life Insurance may be paid by persons in the active military or naval service under the War Department, Navy Department, or Coast Guard Service (a) by direct remittance to the Veterans Administration, or (b) by allotment of pay as in the Navy, Marine Corps, and Coast Guard, or (c) by deduction from pay as in the Army: Provided, That such allotment of pay or authorization for deduction from pay is executed effective within the month preceding the month in which the said premium is due and payable, and the amount of the premium is deducted from the insured's service pay in accordance with the allotment or authorization."

Army Regulations, 10 C.F.R. § 308.1 (Supp.1944, 9 F.R. 12709) provided:

   "Definitions—(a) **Allotment.** The word 'allotment' as used herein, refers to a definite portion of the pay and allowances of a person in the military service, *active or retired*, or of a civilian employee of the War Department assigned for duty in Alaska or outside the continental limits of the United States, which is authorized to be paid to an allottee in a manner prescribed by the Secretary of War." (Emphasis Added).

   \* \* \* \* \*

   "(d) **Class N allotment.** An allotment made for the payment of premiums on National Service life insurance is designated as a 'class N' allotment."

Army Regulations, 10 C.F.R. § 308.2, (Supp.1944, 9 F.R. 12709) provided:

   "**Eligible allotters**—(a) **Military personnel.** Commissioned officers and others who certify their own pay vouchers, and enlisted persons, active or retired, and commissioned officers of other services or departments who may be detailed or assigned to the War Department and who are carried on War Department pay rolls, wherever serving, may make allotments of pay." (Emphasis Added.)

Army Regulations, 10 C.F.R. § 308.3, (Supp.1944, 9 F.R. 12709) provided:

   "**Eligible allottees and authorized purposes—**

   \* \* \* \* \*

   "(b) **Class D and N allotments.** The Veterans' Administration, Washington, D. C., will in all cases be designated as allottee for class D or N allotments."

not provide for allotments or deductions from persons receiving retirement pay from the Army. This omission was corrected by a regulation promulgated in 1951.[4]

However, it seems the Army and the Veterans' Administration treated allotments from retirement pay at the time Reed retired in the same manner as allotments from regular Army pay, as evidenced by the form furnished Reed to indicate his desire to have regular allotments made from his retirement pay, and the Army regulation in force concerning continuance of the allotment upon retirement.[5]

At the invitation of the Army Reed made the request that the allotment for National Service Life Insurance from his retirement pay be continued.[6] The Army was the collector for the Veterans' Administration and inasmuch as the Army was to forward the allotment deduction to the Veterans' Administration, it thereby became and was the agent of the Veterans' Administration for the purpose of collecting premium payments. Hence, there was in the hands of the Veterans' Administration agent (the Army) on the first day of each month a sum sufficient to pay the premiums. We have premium allotments authorized by the insured under National Service Life Insurance in accordance with the provisions of the Veterans' Administration agreement with the Army. Although the deduction was not in fact made, the insurance premium should be treated as paid for the purpose of preventing lapse of the insurance, because upon the due date of the premium there was due and payable to the insured an amount of retirement pay sufficient to provide the payment. These circumstances bring the instant case within the spirit, if not the letter, of Veterans' Administration Regulations, 38 C.F.R. § 10.3410 (Supp.1946, 11 F.R. 9281), which provided at the time of Reed's retirement:

"*Premiums to be deducted from compensation, retirement pay, or pension, treated as paid, for purpose of preventing lapse.* When premium deductions are authorized by the insured under National Service Life Insurance, in accordance with the provisions of Veterans' Administration regulations, the insurance premium will be treated as paid for the purpose of preventing lapse of the insurance, although such deduction is not in fact made, if upon the due date of the premium there is due and payable to the insured an amount of disability compensation, death compensation, *retirement pay*, disability pension, or death pension sufficient to provide the payment. Any premium authorized to be deducted from *disability compensation*, death compensation, retirement pay, disability pension, or death pension, due and payable to the insured and not actually paid, shall be deducted from any amount of current disability compensation, death compensation, retirement pay, disability pension, or death pension that may

---

4. 38 C.F.R. § 8.6 (Supp.1956, 16 F.R. 12989, Dec. 27, 1951) provides:

"**Payment of premiums; insured in active service or entitled to retirement pay.** Premiums on National Service life insurance may be paid by persons in the active military, naval, or Coast Guard service or by persons entitled to retirement pay from such services (a) by direct remittance to the Veterans' Administration, or (b) *by allotment of service pay or retirement pay.*" (Emphasis Added.)

5. For the form furnished Reed to indicate continuance of the allotment from retirement pay, see Note 1, supra. Army Reg-

ulations, 10 C.F.R. § 308.10 (Supp.1946, 11 F.R. 3392) provided:

"**Effect of certain changes in status on class E, D and N allotments—**

\* \* \* \* \*

"(e) **Retirement.** When a member of the Regular Army is retired he may, if he desires, continue Class E allotments for commercial life insurance and also Class D and N allotments. In such a case no action is necessary on the part of the allotter. If such Class E allotments or Class D or N allotments are to be discontinued, a WD AGO Form 141 will be processed for each separate allotment."

6. See note 1 supra.

become due and payable to the insured. The amounts so deducted for premiums shall be deposited and covered into the Treasury to the credit of the National Service Life Insurance Fund."

Under the circumstances we think the receipt and retention by the veteran of the full amount of his retirement pay did not result in a lapse of the policy. The failure to collect was that of the Veterans' Administration by reason of the negligence of its agent, the Army. The Veterans' Administration at all times had power to make itself whole and can yet do so by a deduction of premiums due from the amount of the policy. Such a resolution of this case would attain a more equitable and just result than would a holding that a lapse occurred. Accord, Bouvier v. United States, 9 Cir., 1954, 214 F.2d 329.

The Government, relying on the case of Smith v. United States, 292 U.S. 337, 54 S.Ct. 721, 78 L.Ed. 1295, contends that Lawrence Reed, having knowingly accepted his full retirement compensation, thereby abandoned the policy.

The Smith case is clearly distinguishable. There the veteran had three enlistments. On the first he authorized withholdings of premiums; on the last two he did not. The United States defended on the ground that the authorization for deductions on the first enlistment was ineffective after the expiration of that enlistment and would not authorize deductions for the second and third. This, in connection with the acceptance of full pay during the second and third enlistments, a period of more than three years, the Court concluded, was enough to establish a purpose to abandon the contract. The authorization having lapsed after the first enlistment, no premium deduction could have been made during the second and third.

In the instant case we have a specific authorization for deductions made at the time of retirement, which authorized the deduction each month. The failure to collect was the fault of the agent of the Veterans' Administration. We fail to see in the instant case sufficient evidence of intent to abandon the policy. We note here that no notice of an impending lapse of the policy was given to Reed by the Veterans' Administration.

Judgment reversed, and cause remanded with instructions to the District Court to enter judgment in favor of appellant for the amount of the insurance policy less premiums due at the time of the death of the insured.

CHAMBERS, Circuit Judge (concurring).

I have no figures, but I think we can take judicial notice of what I am sure is true here. Broadly, persons holding, since World War II, National Service Life Insurance would fall into four classes:

1. Those continuing in active service and paid by an army finance officer. (This would be a huge number.)

2. Those who have left the service and receive nothing from the government. (This would be a huge number.)

3. Those who have left the service and are receiving from the Veterans Administration some regular payments for disability. (This is a great number, as any bank teller can testify.)

4. Those like Lawrence Reed who left the service on a retirement permitted by reason of length of service and received retirement pay from an army finance officer. (This would be a large group numerically, but a very, very small group compared to those in groups one, two and three.)

We are not concerned with group 2 above for the reason that a member of it would have nothing coming to him from which the government could deduct.

Groups 1 and 3 under the government regulations were taken care of thoughtfully and expressly. The soldier in active service, group 1, could make an allotment with the army finance officer. 38 CFR, 1943 Supp. § 10.3406. If the army finance officer neglected to deduct the money the regulations provided that his policy would not lapse. 38 CFR, 1943

Supp. § 10.3416 and § 10.3417, 38 CFR 1946 Supp. § 10.3418.[1] If the veteran was the recipient of periodical payments from the Veterans Administration, class 3, he could authorize deductions. 38 CFR, 1945 Supp. § 10.3408 and 38 CFR (1949) § 8.8. If the deduction was not made, he was protected against lapse. 38 CFR, 1946 Supp. § 10.3410. 38 CFR (1949) § 8.10. The validity of these regulations is not questioned.

But an express, clear and sharp regulation is not readily available to cover Lawrence Reed in group 4.

It would appear that the army in 1947 and early 1948 (and years immediately prior thereto) was continuing on into retirement allotments theretofore made by a soldier while on active service—if the retiring soldier in his papers for retirement answered affirmatively that he desired the allotment to be continued. This Reed did.

It was not until April 20, 1948,[2] after Reed's discharge, that the army required the execution of an independent and self-sufficient allotment form by a retiring soldier if he desired a continuance of the allotment. Surely that procedure was prospective for those retiring after the date of the new regulation.

If we must work this case out within the four corners of the regulations, I would construe 38 CFR (1949) § 8.19[3] to protect Reed. It goes as follows:

"*Lapse at discharge or resignation from active service.* When the insured under a National Service life insurance policy shall provide for payment of premiums by allotment of pay, any previously author-ized method of payment of premiums shall be deemed to be revoked. The insurance will lapse upon termination of the allotment because of discharge or resignation from the active service unless the premium be paid prior to expiration of the grace period."

The second sentence is important. I would say the reverse is implied. That is to say: "The insurance will *not* lapse upon *continuance* of the allotment *at the time* of discharge or resignation from the active service * * *" However, this would require the condition that enough money did become due for the army finance officer to deduct the premium. It did in Lawrence Reed's case.

And, dehors the jumble of regulations, I would require the government to pay, absent a showing that Reed was playing sly, actually knowing all of the time that the army finance officer was not taking out the allotment. There is no such showing and I would not imply it. Twenty years ago a soldier could have been charged with knowing what was deducted.[4] But today the deductions before one gets take-home pay are ordinarily known only to the social bore. Checkoffs for multiple items are the order of the day.

Here Reed asked his government (the army paymaster) to regularly deduct the insurance premium. It certainly is to be implied in fact that the government agreed to do so. Surely the procedure was within the authority of the army acting for the government. (Or, would we say, "Yes, it was authorized if it did perform the agreement it made, but not authorized if it did not perform it"?)

---

1. The cited sections do have provision that the policy will lapse if the allotment is "discontinued" by the service department. "Discontinued" implies affirmatively stopping something that was started. "Discontinued" should exclude just neglecting to do what one is supposed to do. However, by 1948 the word "discontinued" was gone. See 38 CFR (1949) § 8.17.

2. Army Regulation 35–5520.

3. See 38 CFR, 1943 Supp. § 10.3419.

4. This concurrence does not question Smith v. United States, 292 U.S. 337, 54 S.Ct. 721, 78 L.Ed. 1295. Zimmerman, the sailor son of Mrs. Smith, did not request the army to continue his allotment from his previous enlistment. Presumably Zimmerman's rate of pay remained the same upon his reenlistment. Therefore, he obviously knew his insurance was not being deducted when his pay check increased. Reed's pay, on retirement, was calculated on a new scale and different from his active service pay.

The government through the Veterans Administration had already agreed to insured Reed's life. Without proof of affirmative acquiescence on the part of Reed, I would think ordinary contract law (and I do not mean estoppel) would protect Reed.

Suppose that an individual was paying monthly premiums to a private insurance company on Policy "A". His endowment Policy "B" matures and is payable to him in installments so long as he lives. These installments are variable depending on interest rates and fund experience. Then suppose the company agrees to deduct the premiums for Policy "A" out of Policy "B" payments, but neglects to do so. Without a showing of affirmative acquiescence by the policyholder, how long would the courts fool around with the insurance company?

The government which broke a promise it was authorized to make should not gain the advantage.

