**UNITED STATES of America, Appellant,**

**v.**

**Lillian P. HOFFART, Administratrix of the Estate of Charles P. Hoffart, deceased, Appellee.**

**No. 15908.**

United States Court of Appeals Eighth Circuit.

June 2, 1958.

Herbert E. Morris, Attorney, Department of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Harry Richards, U. S. Atty., St. Louis,

Mo., and Morton Hollander, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

Dwight Crader, Sikeston, Mo., for appellee.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Lillian P. Hoffart, as administratrix of the estate of Charles P. Hoffart, deceased, instituted this action in the United States District Court for the Eastern District of Missouri, Southeastern Division, to recover the proceeds of a $10,000 National Service Life Insurance policy. A trial to the court without a jury resulted in a judgment in favor of the administratrix for $10,000 less the aggregate of the premiums earned and unpaid between May 1, 1954, and October 16, 1955, the date of death of Charles P. Hoffart, the insured (sometimes referred to herein as deceased). The Government has appealed, and, as it did below, contends that the policy in question lapsed on account of the failure of the deceased to pay premiums due on May 1, 1954, and on each successive month thereafter until his death.

The essential facts, presented by stipulation of the parties, and included in the Court's findings are: Pursuant to an application dated August 30, 1950, National Service Life Insurance policy No. V-1470-93-08 was issued to and upon the life of Charles P. Hoffart. In the application, Hoffart authorized an allotment from his active service pay or "Service Department Retirement Pay" for the purpose of paying premiums due under the policy. Premiums were deducted from his Army pay through May, 1951. He was separated from service and honorably discharged on December 31, 1953. On his discharge, his address for mailing purposes was shown to be Box 206, Sikeston, Missouri.

Pursuant to Hoffart's application of December 29, 1953, for disability compensation, a disability compensation rating of 20% was made by the Veterans' Administration on March 16, 1954, effective retroactively to January 1, 1954. This amounted originally to $31.50 per month, but was increased to $33.00 effective October 1, 1954. Hoffart received compensation payments from the Veterans' Administration in the following amounts: March, 1954, $94.50; April, 1954, through October, 1954, $31.50 each month; November and December, 1954, $33.00 each.

On March 15, 1954, Hoffart signed a change or designation of beneficiary form, VA Form 9-336, which showed his address to be c/o George Johnson, 512 E. Center Street, Sikeston, Missouri. On the form he designated his estate as principal beneficiary, and in paragraph 7, headed "remarks" he stated: "I retired from the U. S. Army 12-31-53, it is my request that premiums be taken from my retirement pay. Please send necessary form for this purpose." On the same day he executed another VA form, designated, "Resumption of Premium Payments After Separation From Active Service," wherein he stated that future premiums would be paid monthly. The amount shown on this form to have been remitted was "none." This form was enclosed in a premium notice envelope addressed to the deceased at Box 206, Sikeston, Missouri. The premiums notice envelope referred to the policy, No. V-1470-93-08, and showed the premiums due and to become due May 1, 1954.

The change or designation of beneficiary form, executed on March 15, 1954, was received by the Veterans' Administration, but the Veterans' Administration did not reply thereto, did not forward form to Hoffart and did not communicate with the Department of the Army with regard to the request contained therein.

Hoffart was placed on the retired list of the regular army on December 31, 1953, and received retirement pay for the period between January 1, 1954, through the date of his death on October 16, 1955. In DD Form 418, styled "Data for Payment of Retired Armed Forces Personnel," in paragraph 5, reading: "The following allotments are authorized

to be deducted from my retirement pay," the word "none" appeared. Retirement pay payments were made to Hoffart as follows: January 31, 1954, gross amount due $130.33, withholding tax deductions $13.38, net amount paid $116.95; from February, 1954, through February, 1955, inclusive, the gross amount due each month was $130.33, withholding tax deduction was $3.30 each month and the net amount paid each month was $127.03. On February 28, 1955, deceased filed a formal election to waive retirement pay to the extent of the disability compensation pay per month that he was receiving from the Veterans' Administration. He continued to be entitled to receive compensation pay in the amount of $33.00 a month from that date through the date of his death; however, disability compensation payments were not actually received by Hoffart after February 28, 1955, but were withheld from him and applied by the Veterans' Administration to an overpayment to him because he had received the full amount of both retirement pay and disability compensation between January 1, 1954, and February, 1955.

No premiums were deducted from Hoffart's army service pay between June 1, 1951, and the date of his separation on December 31, 1953, neither were premium payments deducted from the retirement pay due to and received by him at any time before his death. The records of the Veterans' Administration reveal that no premium payments were transmitted to it by remittance in any form by the deceased after December 31, 1953.

The trial court, in holding that a valid contract of National Service Life Insurance between Hoffart and the Government was in existence and in effect on the date of Hoffart's death, reached these conclusions of law:

> "That said good and valid contract of National Service Life Insurance existed at the time of the death of the deceased-insured by reason of the request which was contained in Change of Beneficiary Veterans Administration Form 9-336, as referred to in paragraph 7 of the Findings of Fact which was in a form sufficient to comply with the provisions of paragraph 5 of the Department of the Army Regulation, SA-35-19-21, dated February 16, 1953.
>
> "The Department of the Army is the administrative agency of the defendant charged with the exclusive control and administration of the retirement pay due the deceased; however, for the purpose of deducting premiums from that retirement pay, the Department of the Army is the agent of the Veterans Administration, and mailing the request, as referred to in paragraph 7 of the Findings of Fact, to the Veterans Administration in the form as done in this case is sufficient to prevent lapse of the said policy of insurance.
>
> "By reason of Veterans' Administration Regulation 38-CFR 8.10, the earned premiums, earned between May 1, 1954 and October 16, 1955, the date of death of the deceased-insured, will be treated as paid for the purpose of preventing lapse of the insurance policy."

Under the provisions of Title 10 U.S.C.A. § 894,* "The Secretary of the Army is authorized to permit officers, * * * and enlisted men of the Army, active or retired, * * * to make allotments from their pay, under such regulations as he may prescribe, for the support of their families * * * or for other proper purposes which in his discretion warrant such action." Title 10 U.S.C.A. § 948 ** authorizes any enlisted man of the army who shall have completed the specified years of active service to retire "* * * under such regulations as the Secretary of the Army shall prescribe, * * *." The provisions of Army regulation SR 35-1900-21, promulgated by the Secretary of the Army, and here pertinent, are:

* Now 10 U.S.C.A. §§ 3689, 8689.

** Now 10 U.S.C.A. §§ 3914, 8914.

"Action upon authorization, discontinuance, or change of allotments of pay after retirement.—a. *By retired member.*—All changes to existing allotments or authorization of new allotments will be forwarded direct to the Finance Office, U. S. Army, Washington 25, D. C., Attn: Retired Pay Branch (or other finance officer specifically designated to pay retired pay), using Form 234. In the event this form is not available, a letter containing full particulars over the written signature of the individual will suffice.

"*By finance officer specifically designated to pay retired pay.*—Upon receipt of the allotment authorization, the disbursing officer will make a record of the amount to be deducted and forward the *original* of the authorization to the Finance Office, U. S. Army, Washington 25, D. C., ATTN: Retired Pay Branch, Allotment and Control Section. Allotment authorizations will be forwarded to arrive not later than the 15th of the month in which the change is to be effective. The finance officer will prepare and forward the allotment discontinuance in all cases where for any reason retired pay ceased to be paid, even temporarily, citing the reason for discontinuance (waiver, death, etc.) in item 16, Form 234."

Appellee concedes that subsequent to Hoffart's separation from the armed forces and the expiration of the 120 days waiver period, Title 38 U.S.C.A. § 823, no premiums were in fact paid to keep the policy of insurance in effect, and that during that period no deductions were made from Hoffart's retirement pay to cover the insurance premiums. She contends, however, that because deceased advised the Veterans' Administration of his retirement, in the form designed to effect a change or designation of beneficiary, and requested that premiums be taken from his Army retirement pay, that all premiums thereafter becoming due should be treated as paid for the purpose of preventing lapse of the policy. This contention is premised on the theory that "the Department of the Army is the agent of the Veterans' Administration for the purpose of deducting premiums from retirement pay * * *." We are unable to square this position with the controlling legal principles.

Appellee has cited no statute or regulation establishing the agency relationship between the Army and the Veterans' Administration contended for, and which was invoked by the Court as the principal basis for its decision. To the contrary, it would appear that, under the applicable regulations, the Army *alone* was charged with the responsibility for the administration of the retired pay of an enlisted man in Hoffart's status and of all allotments from that pay. Thus, under paragraph 5 of Army Regulation 35–1900–21, in order to authorize a new allotment for the payment of premiums on National Service Life Insurance, designated as "class N" allotment (see paragraph 2e, Army Regulation 35–1900), the *retired member* was required to forward direct to the Finance Office, U. S. Army, Washington 25, D. C., Attn: Retired Pay Branch (or other finance officer specifically designated to pay retired pay) Form 234, or, if such form was not available, a letter containing full particulars over written signature of the individual. Under another section of the same regulation, paragraph 3, it was provided that authorization for class N allotment will be prepared by the retired member, and an enlisted member of Hoffart's status was required to submit his allotment authorization to his unit commander or unit personnel officer for transmittal to the finance officer or class B agent officer making the last payment of active duty pay. But we find ourselves unable to construe the aforementioned, or any other Army regulations, as designating the Veterans' Administration as an agency to which an allotment authorization respecting Army retirement pay could be submitted or imposing upon the Veterans' Administration an obligation to

forward such an authorization to the Department of the Army.

Neither do the regulations promulgated by the Veterans' Administration impose upon that agency the duty to recognize and act upon an authorization directed to it by the retired member to pay insurance premiums out of his Army retirement pay. We are mindful of Veterans' Administration Regulation 38 C.F.R. (1949 ed. 1955 Sup.) § 8.8, which provides that the insured under a National Service Life Insurance policy may authorize the monthly deduction of premiums from *disability compensation, retirement pay* or other forms of compensation. However, this regulation lends no support to the agency theory, for it is clear and explicit that the allotment authorization made possible by the regulation relates solely to retirement pay that may be due and payable to the retired member *under any laws administered by the Veterans' Administration.*[1] It is also true, as contended by appellee and as found by the trial court, that by reason of another regulation of the Veterans' Administration, 38 C.F.R. (1949 ed.—1955 Sup.) § 8.10, "When premium deductions are authorized by the insured under National Service life insurance, * * * the insurance premium will be treated as paid for the purpose of preventing lapse of insurance, although such deduction is not in fact made, if upon the due date of the premium there is due and payable to the insured an amount of * * * retirement pay * * * sufficient to provide the payment." But again, this regulation deals solely and exclusively with the "retirement pay" and other compensation payments administered by the *Veterans' Administration,* and not with *Army retirement pay,* which, as we have seen, is administered solely by the Army.

It is strenuously urged by appellee that under the law as announced in Gray v. United States, 9 Cir., 241 F.2d 626, the relationship of principal and agent exists between the Veterans' Administration (said to be the principal) and the Army (said to be the agent). We are unable to agree. In Gray, and unlike the instant situation, the retiring member indicated on his retirement certificate that he desired to continue the National Service Life Insurance allotment from his retirement pay. Unlike SR 35-1900-21, supra, which required the retired serviceman to affirmatively authorize the allotment from his retirement pay, the Army regulation in effect at the time of separation from service in Gray provided that the allotment would be continued if the member stated affirmatively in his retirement papers that he desired the allotment to be continued. See footnotes 1 and 5 to the opinion in Gray v. United States, 241 F.2d at pages 627 and 628. Notwithstanding full compliance by the serviceman with the applicable procedural regulations, the Army paymaster failed to make the allotment and the premiums were not paid. In ruling that under the facts presented, the plan in effect between the Veterans' Administration and the Army, and the regulations then in force, the policy did not lapse, the court stated, loc. cit. 628:

> "At the invitation of the Army Reed made the request that the allotment for National Service Life Insurance from his retirement pay be continued. The Army was the collector for the Veterans' Administration and inasmuch as the Army was to forward the allotment deduction to the Veterans' Administration, it thereby became and was the agent of the Veterans' Administration for the purpose of collecting premium payments. Hence, there was in the hands of the Veterans' Administration agent (the Army) on the first

1. Veterans' Administration is required to administer and pay "retirement pay" to Emergency Officers of World War I. See Title 38 U.S.C.A. §§ 581, 582 and 710. Veterans' Administration Regulation 38 C.F.R. § 8.8 authorizing allotment from "retirement pay" is designed to cover this group of World War I retired veterans.

day of each month a sum sufficient to pay the premiums."

While the holding, under the facts presented, that there was an obligation on the Army to forward the allotment deductions to the Veterans' Administration, was fully justified, we do not understand the effect of the opinion to be that a sweeping agency relationship exists between the Army and the Veterans' Administration for any and all purposes. And, because the factual situation in Gray is so manifestly dissimilar and distinguishable from the instant case, the ruling therein cannot be controlling here.

The argument advanced by appellee that the Government is bound, because of the failure of the Veterans' Administration to take affirmative action when it concededly was informed of deceased's desire that the premiums be paid out of his retirement pay, reflects an attempt to rely on laches or estoppel in an effort to circumvent the failure of anyone to pay the premiums. A complete answer to this contention lies in the firmly entrenched principle that the United States is in a position different from that of private insurers and is not estopped by the laches or unauthorized acts of its agents. James v. United States, 4 Cir., 185 F.2d 115; United States v. Fitch, 10 Cir., 185 F.2d 471; United States v. Holley, 5 Cir., 199 F.2d 575; United States v. Willoughby, 9 Cir., 250 F.2d 524; Halverson v. United States, 7 Cir., 121 F.2d 420, certiorari denied 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 556; McDaniel v. United States, 5 Cir., 196 F.2d 291, at page 294 where the Court stated: "As appellee correctly says in its brief, estoppel may not be applied against the United States when acting in its sovereign capacity in administering the National Service Life Insurance Program." (Citing cases.)

In Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, loc. cit. 384, 68 S.Ct. 1, loc. cit. 3, 92 L.Ed. 10, another principle of law, here applicable, is succinctly stated, "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." And again, 332 U.S. on page 385, 68 S.Ct. on page 3: " 'Men must turn square corners when they deal with the Government.' "

The point is also made by appellee that under Veterans' Administration Regulation 38 C.F.R. § 8.8, supra, the insured under a National Service Life Insurance policy may authorize payment of premiums from *disability compensation*, etc., and that since Hoffart had been given a 20% disability compensation rating on March 16, 1954, effective retroactively to January 1, 1954, the Veterans' Administration should have deducted the premiums from such compensation. This contention must fail for the simple reason that Hoffart, in his communication to the Veterans' Administration, upon which appellee must and does rely, explicitly stated he desired the premiums to be taken from his *Army retirement pay*. Nor was the deceased entitled to have his insurance continued in force merely because he was drawing disability compensation from the Veterans' Administration, the agency which could have deducted the premiums from such compensation upon a proper authorization. In United States v. Griffin, 8 Cir., 216 F.2d 217, 222, certiorari denied 348 U.S. 927, 75 S.Ct. 339, 99 L.Ed. 726, this court approved this ruling in Mikell v. United States, 4 Cir., 64 F.2d 301, 302: " 'an insured who defaults in the payment of premiums on a government policy is not entitled to have his insurance continued in force merely because in some of its various activities, not connected with insurance, the government is indebted to him.' "

Since it is made to appear that there was no compliance with the applicable procedures for authorizing an allotment from Hoffart's Army retirement pay for the purpose of paying the premiums on his National Service Life In-

surance policy, we hold that the policy lapsed on account of nonpayment of the premiums due on May 1, 1954, and thereafter.

While it is unnecessary, in view of the foregoing holding, to consider the Government's contention that the evidence established that Hoffart intended to abandon the policy, we are constrained to observe that this point is well taken. We have seen that Hoffart, after informing the Veterans' Administration of his desire to have premiums taken from his Army retirement pay, requested that agency to "Please send necessary form for this purpose." The form was never sent. On January 31, 1954, and February 28, 1954, Hoffart received retirement pay in the amounts of $116.95 and $127.03, respectively. After executing the form upon which reliance is placed, on March 15, 1954, and between March 31, 1954, through February, 1955, Hoffart received and cashed twelve Army retirement checks in the exact amount of $127.03 each. This circumstance was sufficient to place any reasonably prudent man, with average intelligence, on notice that the premiums were not being deducted from his retirement pay. Not only did Hoffart do nothing in an effort to effectuate an allotment for purpose of taking care of the premiums, but it is a fact that on June 28, 1954, and on July 20, 1954, the Veterans' Administration sent two "lapse letters" to Hoffart at Box 206, Sikeston, Missouri. While there is no showing that these letters were received, it is undisputed that the letters were sent to the same address to which the retirement pay checks concededly received, were forwarded, and neither letter was returned to the sender. The circumstances on the issue of abandonment are as strong and convincing as those in Smith v. United States, 292 U.S. 337, 54 S.Ct. 721, 78 L.Ed. 1295, where the Supreme Court held that the insured had manifested a clear intent to abandon the policy.

The judgment is reversed.